HAWTHORNE, Justice.
 

 These two cases were consolidated for the purpose of trial in the lower court and bn appeal in this court. Both cases arise out of the same state of facts, and the plaintiff in each is seeking to recover damages for the alleged negligent acts of the defendant. The damage to the property of both parties was caused by a fire which ignited after a truck-owned by W. B. Delafield ran over a butane gas line installed and operated by Harris Drilling Company, Inc., at an oil well it was drilling in Calcasieu Parish, Louisiana. The damage suffered by Harris Drilling Company due to the destruction of numerous items of equipment and supplies was stipulated and fixed at the sum of $11.586.42, and the damage suffered by Delafield for the loss of the truck was 'stipulated and fixed at the sum of $6597.91. The plaintiff in each suit seeks to recover in solido from the defendant and the defendant’s insurer the amount so stipulated as damages. The lower court rendered judgment in each suit rejecting plaintiff’s demands and dismissing the suit, and both plaintiffs have appealed.
 

 Harris Drilling Company was engaged in the drilling of an oil well in Calcasieu Parish, Louisiana. Because of the boggy nature of the -terrain, there had 'been built for the use of vehicles a board road leading to the well site and a turnaround platform at the site, which hád been constructed pursuant to the instructions and specifications of Harris Drilling Company. The turnaround or wooden platform was made of 3"x8" rough-timbers, was approximately six inches above the ground, and according to the superintendent of Harris Drilling Company had dimensions of 40' x 60'.
 

 In connection with its operations and the drilling of the well Harris Drilling Company had installed and was using a butane gas system and had located a butane gas storage tank about three feet from the south side of the wooden platform or turnaround. There was a one-inch pipeline fastened to the top of, and laid on, boards measuring 3" x 8" running from this butane tank parallel to the south edge of the turnaround at a distance therefrom estimated by various witnesses to be from sjx to 24 inches.
 

 On the afternoon of March 5, 1948, a truck owned by W. B. Delafield and driven' by his employee O. C. Swearington was delivering to the well site a string of casing consisting of about 40 joints each 40 feet in length. The truck was a large International tandem truck with a wheelbase of 254 inches and a legal maximum load in excess of 60,000 pounds. The driver of the truck approached the well site
 
 *421
 
 on the board road and drove the truck onto the wooden platform or turnaround. He then proceeded to move his truck back and forth in the vicinity of the butane tank in an effort to get the trailer attached thereto, on which the casing was loaded, alongside a pipe rack. As he was making these maneuvers, the left front wheel of the truck went off the platform and came in contact with the one-inch butane gas pipeline, damaging it in such a way as to cause butane gas to escape. The escaping gas became ignited either from the truck itself or from an open flame in a bunkhouse near by, and the fire ensued which occasioned the damages to the respective plaintiffs.
 

 The driver of the tandem truck had been operating trucks in oil fields for approximately 20 years, and most of his experience had been in hauling oil field equipment and supplies to drilling rigs. According to his testimony,. when he approached the platform or turnaround, he saw and recognized the butane gas tank, located some three feet from the platform, and the connections leading from it. Although he stated that he did not remember whether he saw the pipeline running from this tank parallel to the platform, he admitted that he had a good idea of where the pipe ran after it left the tank, and, further, that from his experience he knew that the connections and the line leading therefrom would be in close proximity to the turnaround. He also admitted that he knew that butane gas was highly inflammable and dangerous, and that it would be dangerous to drive off a platform and over a butane gas line such as this. This witness admitted also that, at the time he ran off the turnaround and onto the one-inch butane pipeline, he was in the act of backing the truck and was looking tO' the rear of the truck and its load; that, although he cut his wheels to the right, he did not observe where the front of his. truck was going, and that his first knowledge of having struck the line was when he heard the hissing noise of escaping-gas.
 

 To summarize, he came onto the turnaround in the heavy truck, saw and recognized the butane tank across on the south side, knew that butane gas is a dangerous .and inflammable material, was familiar enough with equipment around rig sites to kqow that the line was laid in close proximity to the edge of the-turnaround, and knew just about where this pipeline was. Under these circumstances it was negligence for the driver, while maneuvering his truck close to the butane equipment, to devote his attention entirely to the back of his truck because by doing so he failed to use due care to make sure that the front end of the truck did ' not slip off the turnaround in this dangerous area. We therefore conclude that the negligence of Delafield’s truck driver has been established.
 

 
 *423
 
 We next consider the question of whether Harris Drilling Company also was negligent.
 

 It has been recognized by the courts of this state that butane gas is highly inflammable and dangerous. See Jones v. Blossman, 209 La. 530, 25 So.2d 85; Galouye v. A. R. Blossman, Inc., La.App., 32 So.2d 90. Those who handle and distribute a highly inflammable gas are charged with the duty to exercise a degree of care commensurate with its dangerous nature and necessary to protect the public from any foreseeable injury therefrom. Raphael Brothers v. Cerophyl Laboratories, Inc., 211 La. 354, 30 So.2d 116. Moreover, the necessity of using great care in installing and handling butane gas and its equipment is shown by the Rules of the Louisiana Liquefied Petroleum Gas Commission and the Standards of the National Board of Fire Underwriters for Liquefied Petroleum Gases, and especially applicable to this case is the provision that “Piping outside buildings may be buried, above ground, or both, but shall be well supported and protected against mechanical injury”. (Para, g, p. 46, Rules of Louisiana Liquefied Petroleum Gas Commission; Para, g, p. 8, Standards of National Board of Fire Underwriters.)
 

 The superintendent and other employees of Harris Drilling Company testified that they were well aware of the inflammable and dangerous nature of butane gas. These witnesses also testified that trucks frequently nan off such turnarounds or wooden platforms as the one in the instant case, and that for them to' run off was not unusual. Notwithstanding this knowledge Harris Drilling Company installed or caused to be installed the butane tank in close proximity to the platform and caused to be laid leading from the tank an unprotected one-inch pipe within a few inches of, and parallel to, the wooden platform. This in our opinion constitutes negligence on the part of the drilling company, for it should have reasonably anticipated and foreseen that the accident which did happen might happen, or, stated somewhat differently, since it was a usual occurrence for trucks to run off a turnaround, Harris Drilling Company should reasonably -have anticipated and foreseen that an accident would occur if it laid the insufficiently protected pipe containing a dangerous and inflammable material so close to the edge of the platform.
 

 Harris Drilling Company contends, however, that it was the custom in oil field operations of this nature to place the butane tank and the pipeline therefrom in close proximity to the turnaround, that there was nothing unusual in the manner of its installation in this case, and that this custom or manner of installation should be considered by the court in determining the question of negligence, as it establishes that the drilling company was acting properly and prudently.
 

 
 *425
 

 [4]
 
 Custom and usage may be regarded as a matter proper for consideration in determining whether or not sufficient care has
 

 The plaintiff in each case contends that, •even if there were negligence on the plaintiff’s part, this negligence was not the proximate cause of the accident, and that, ■since plaintiff’s negligence was not the proximate cause and the defendant’s negligence was the proximate cause, the defendant is liable and the plaintiff should recover. There is no merit in this contention. Each plaintiff contributed to the happening of the event or accident, and without the negligence of each the accident would not and could not have happened, so that the negligence of both parties caused the accident.
 

 Under the facts and circumstances, we are therefore of the opinion that the plaintiff in each case was contributorily negligent, and that such contributory negligence bars recovery.
 

 Harris Drilling Company contends that it is entitled to recover under the doctrine of last clear chance, notwithstanding its contributory negligence. We do not think, however, that such doctrine has any applicability under the facts and circumstances of the instant case, because it has not been proved to our satisfaction that the defendant Delafield had a last clear chance to avoid the accident.
 

 Delafield and his insurer, defendants in the suit instituted by Harris Drilling Company, filed an exception of no right of action and lack of capacity, but, since we have concluded that plaintiff is not entitled to recover on the merits of the case, it is not necessary that we consider or pass upon this exception.
 

 For the reasons assigned, the judgments of the district court rendered in suit styled Harris Drilling Company, Inc., v. W. B. Delafield, No. 26912 on the docket of the Fourteenth Judicial District Court for the Parish of Calcasieu, and suit styled W. B. Delafield v. Harris Drilling Company, Inc., No. 26919 on the docket of the same court, rej ecting plaintiffs’ demand's and dismissing their suits are affirmed; plaintiffs-appellants each to pay one-half of the total costs of these appeals.