REID, Judge.
This is a suit for damages resulting from an explosion of gas escaping from a gas main. The petitioner is Marie Louise Heatly, whose house was damaged, and her two insurance carriers, Aetna Casualty & Insurance Company and Fireman’s Fund Insurance Company, her subrogees. The defendants are Gulf States Utilities Company, the public utility company which owned and operated the main which exploded and E. H. Reeder Construction Company, Inc., the contracting company which was constructing sewerage improvements in the area of the explosion. The Lower Court awarded damages in favor of petitioner and against defendant E. H. Reeder Construction Company in the sum of Eight Thousand Seven Hundred Thirty-two and no/100 ($8732.00) Dollars. E. H. Reeder Construction Company has appealed alleging error in holding it liable, and claims that the sole and proximate cause of the explosion was the negligence of Gulf States Utilities Company. The petitioner has also appealed in order to protect itself in the event this Court should decide that the damages resulted from the negligence of Gulf .States Utilities and not Reeder Construction Company. The Lower Court also held in favor of Gulf States Utilities and dismissed :the suit as against this company.
The facts disclose that on the early morning of April 6, 1962 there was an ex-i plosion and fire at the dwelling numbered 990 N. 46th Street in the City of Baton Rouge. The premises is owned by Marie Louise Heatly, a petitioner herein. At the time of the explosion and fire, E. H. Reeder Construction Company, Inc., hereinafter referred to as Reeder was performing work under its contract with the Greater Baton Rouge Consolidated Sewer District in the laying of a sewer line at a depth of approximately eighteen (18) feet proceeding along N. 46th Street in a northerly direction. In the course of performing this work, Reeder had arrived in the vicinity of 990 N. 46th Street, at which point the sewer line was to extend off to the left or west along Jonah Street. Jonah Street forms the bottom part of a “T” intersection with N. 46th Street. 990 N. 46th Street is directly east of this street intersection.
The procedure used by Reeder in laying the pipeline consisted primarily of digging up the street to the required depth, hauling the dirt to the rear of the project, laying the pipe, refilling the ditch and tamping and rolling the dirt. During the process of this work several water and gas lines were encountered in the area about which we are concerned. A 2 inch high pressure gas line extended north and south along the east side of N. 46th Street and made a “T” with a 2" gas line which extended to the west along the south side of Jonah Street. This “T” intersection was directly in front of the damaged premises. From these two (2") inch high pressure gas lines extended three quarter inch service lines to the various residences in the area. As Reeder’s crew would encounter these ¿4 inch service lines a Gulf States crew would come in, disconnect and remove the lines, and replace them after the construction workers had passed.
On April 4, 1962 both Reeder and Gulf States were working on the job near the place where the explosion occurred. Reed-er had uncovered the 8" water main and 2" gas main running east and west on Jonah Street, and the Gulf States crew had re-wrapped the exposed gas line, and the Reed-er crew had back filled about fourteen and *653 one-half (14^4') feet of the 18 foot deep hole to a point where the 2 inch gas line was covered to a depth of 18 inches. The area between the gas line and the “cribbing” or “shaft”, which was a distance of about 20 feet, had not been back filled completely, thus resulting in a slope from the gas line down to the cribbing. The cribbing was situated north of the gas line within the intersection of Jonah Street and N. 46th Street, at a location where a manhold was to be constructed.
This was the condition of the area in question at the end of the work day on April 4, 1962. Gulf States claims that this gas line was straight when its crew completed rewrapping it on April 4, 1962. Reeder also claims the gas line was straight when it completed rewrapping it on April 4, 1962. Reeder also claims the gas line was straight when it completed putting the last 18 inches of dirt over it. Because of inclement weather conditions, no work was done in the area on April 5, 1962. The record discloses that there was a total of a little more than 2 inches of rainfall in the area from April 5, 1962 through April 6, 1962, most of which “one and sixty-three hundredths (1.63") inches” fell just before four o’clock in the morning on April 6, 1962.
The record discloses that on the morning of the accident petitioner, Marie Louise Heatly, was confined to the hospital and was not at home. However, she had let a friend, Rupert Matta Jr., occupy her house during the night of April 5, 1962. Matta testified that at approximately nine o’clock P.M. on April 5th, an employee of Gulf States Utilities knocked on the door and asked him if he had reported a gas leak in the area. Matta had not reported such a leakage, nor did he notice that one existed until this time. However, he and the service man did inspect the area in front of the Heatly residence. Although they did smell gas, they were unable to locate any leaks. The serviceman reported his failure to his company over his truck radio, and his superintendent instructed him to return to the office, that a crew would check the matter on the following morning.
Rupert Matta, Jr. testified in the early morning of April 6, 1962 he was awakened by something which sounded like thunder. There was a noise coming from the bathroom and he could see water bubbling and running from the bathroom. He got out of bed to investigate and the explosion occurred. The record discloses that in addition to the bubbling of gas coming into the Heatly residence through the commode in the bathroom, there was a bubbling and flames coming from the ground around the septic tank and bubbling coming from the ground in the area of the construction work in the front of the Heatly residence. After investigation it was disclosed that the 2 inch gas main extending west across N. 46th Street was bent downward at the point where it crossed the sewer evacuation made by Reeder, that this bending shortened the main line causing it to pull out of its coupling to the 2 inch main running north and south along the east side of N. 46th Street. As a result, both high pressure mains were blowing gas in the ground at the point of separation. The record also indicated that the bleeder line which runs from the Heatly septic tank out toward N. 46th Street ended in close proximity to this breakage. The theory advanced by Gulf States was that some of the escaping gas went through this bleeder line into the septic tank, and from there into the commode and house of petitioner. This theory, we believe, is substantiated by the evidence before us. Although Reeder argues that the explosion and resulting damages could have been caused by sewer gas, we believe that, considering the severity of the explosion, the escaping gas in the area and the location of the disconnected gas mains, the evidence is overwhelming to the effect that the theory advanced by Gulf States is the correct one.
With regard to the question of liability we cannot concur with the Lower Court in holding Reeder solely responsible for the *654 explosion. Under Reeder’s contract the sole responsibility for finding and repairing leaks was with Gulf States Utilities Company. Several leakages had been reported and Gulf States repaired them. Reeder could not have made any repairs if the leakage had been reported to it, or if they had located the leak itself.
When the report came in of the odor of gas in the area,- Gulf States sent a “trouble-shooter” to investigate it. He went to the home of plaintiff and inquired of Matta as to any gas leakage and Matta at that time hadn’t noticed that one existed. This “trouble-shooter” then radioed the office and was informed to go home they would locate the trouble in the morning. We believe it was the duty of Gulf States, when the report was received to investigate the leak and repair same. Gulf States should have kept the “trouble-shooter” on the job and even sent additional repairmen to locate the gas leak and repair same instead of postponing the matter until the next morning.
It is a well recognized rule of law that gas companies are held to a very high degree of care. One of the early decisions of the Supreme Court, Feely v. National Packing Company, Ltd., 141 La. 903, 75 So. 837, quoting from R.C.L. held as follows:
“ ‘It is a well established rule that a higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property, and in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent the escape of gas from its pipes commensurate to the danger which it is its duty to avoid, and if it fails to exercise this degree of care and injury results therefrom, the company is liable, provided the person suffering the injury either in person or in property is free from contributory negligence.’ ”
This principle of law has been reiterated in later decisions of our Supreme Court. In the more recent case, Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395, the Supreme Court quoting from its prior decision in Raphael Brothers v. Cerophyl Laboratories, 211 La. 354, 30 So.2d 116 held as follows:
“ ‘Natural gas, because of its highly inflammable and explosive character, is an inherently dangerous instrumentality. Those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom.’ ” See also Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627.
In this case, Gulf States refused to permit the removal of the main during excavation and back filling operations so as to prevent the possibility of damages to the main and its connection, but after having been notified of the leak and with ample time to locate and repair it, it chose to close its eyes to the possibility of the injury and relegated the performance of its duty to a later date. We believe that this attitude was negligence on the part of Gulf States and that it should be held jointly liable with Reeder for damages in this case.
The amount of damages $8632.00 was stipulated, and is not an issue in this appeal.
For the foregoing reasons, it is ordered that the judgment of the Lower Court rejecting plaintiffs’ claim against Gulf States Utilities Company be reversed and judgment rendered herein in favor of plaintiffs and against defendant, E. A. Reeder Construction Company, Inc., and Gulf States Utilities Company jointly and in solido for *655 the amount of stipulated damages herein and all costs of Court.
Reversed in part, affirmed in part, and rendered.