170 So.2d 133 (1964)
King SURRY and Katie Clark, Plaintiffs-Appellees,
v.
ARKANSAS LOUISIANA GAS COMPANY et al., Defendants-Appellants.
No. 10302.
Court of Appeal of Louisiana, Second Circuit.
December 14, 1964.
Rehearing Denied January 7, 1965.
Writ Refused February 23, 1965.
*134 Mayer & Smith, Shreveport, for Arkansas Louisiana Gas Co. and United States Fidelity & Guaranty Co., appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for Frank Fulco and others, third parties-defendants-appellants.
Wilson, Abramson, Maroun & Kaplan, Shreveport, for King Surry and Katie Clark, plaintiffs.
Nesib Nader, Shreveport, for Confederate Memorial Medical Center, intervenor-appellee.
Before HARDY, AYRES and BOLIN, JJ.
HARDY, Judge.
This is an action, ex delicto, by plaintiff, King Surry, and his common law wife, Katie Clark, for the recovery of damages for personal injuries and loss of property. It was consolidated for purposes of trial and appeal with another suit for damages by the owners of a house, rented and occupied by these plaintiffs. Defendants in this suit are the Arkansas Louisiana Gas Company, its liability insurer, United States Fidelity & Guaranty Company, and the named members of the Fulco family, owners of the house occupied by plaintiffs as their lessees. An intervention was filed on behalf of Confederate Memorial Medical Center, statutory subrogee of plaintiffs, who prayed for recovery of hospital and medical services rendered.
After trial there was judgment in favor of plaintiff, King Surry, in the principal sum of $15,750.00, in favor of plaintiff, Katie Clark, in the principal sum of $10,750, in favor of Confederate Memorial Medical Center in the principal sum of $760.00 against Arkansas Louisiana Gas Company, United States Fidelity & Casualty Company and the Fulco defendants in solido. The judgment against the insurer was restricted to the limits provided in the policy of insurance. From this judgment the defendants have appealed and plaintiffs have answered the appeal, seeking an increase in the amounts of the judgments.
This suit arises from a fire which resulted from a gas explosion in a house located at 510 Western Avenue in the City of Shreveport, owned by members of the Fulco family and occupied by plaintiffs as lessees. The explosion and fire occurred between 1:30 and 2:00 A.M. on Sunday, November 26, 1961. Plaintiffs were severely burned and the house was extensively damaged.
The material facts established on trial were that plaintiff, Surry, rented the house, which was owned by the members of the Fulco family, on November 22, 1961. On the same date Surry called at the office of defendant *135 gas company and requested the transfer of gas service from his previous address to the Western Avenue house. Plaintiffs and their children began actual occupancy of the rented premises on Friday, November 24th. The dwelling was furnished with a gas burning hot water heater located in the bathroom and a built-in gas heater located in the fireplace in the living room. On November 24th Surry, who, by occupation, was a plumber's helper, installed a cook stove in the kitchen and a heater in the adjacent bedroom. These installations were made by connecting the appliances with the existing gas supply lines under the house. Earlier on the same day, that is, Friday, November 24, 1961, one C. A. McDermott, a utility serviceman employed by defendant gas company, had visited the premises for the purpose of turning on the gas at the meter. According to McDermott's testimony, he found the meter valve turned off but unprotected either by a padlock or seal. On testing the meter by opening the line, a leakage of gas was observed, whereupon he turned the gas off, left the premises and noted on his order slip, which was returned to the company office, "noh onc", interpreted as meaning "No one home. Opening not capped." No attempt was made by McDermott or any other employee or representative of defendant gas company to notify the occupants or owners of the premises as to the dangerous condition which existed by reason of the escape of gas from the supply lines. Nor were there any precautions taken to prevent the opening of the gas line. The testimony is conclusive on the point that the meter-valve could be turned with the bare hands or readily opened with the use of pliers or wrench.
Plaintiffs and their children slept in the house on Friday night. On Saturday night plaintiffs and their infant child slept in the bedroom adjoining the kitchen, and it was in the early hours of Sunday morning that they were awakened by a violent explosion which threw them from their beds. The plaintiffs testified that there appeared to be a wall of fire rolling from the vicinity of the kitchen, and this portion of the house was almost immediately engulfed by flames. Both plaintiffs were severely burned, but, fortunately, were extricated from their flaming bedroom and removed by ambulance to the Confederate Memorial Hospital for treatment.
One of the material facts in connection with this case involves the cause of the fire. Captain Matlock, of the Fire Inspection branch of the Shreveport Fire Department, testified that, after the fire had been extinguished, his attention was called by one of the firefighters to a location near the rear of the house at which considerable difficulty had been experienced in attempting to control the fire. Upon examination an uncapped supply line was discovered. This pipe was located beneath the kitchen floor in close proximity to, if not actually jammed against, the kitchen flooring about a foot or so from the rear edge of the house. A hole in the floor gave indication that this pipe had probably been used by a former occupant for the purpose of furnishing gas to a kitchen stove.
It was the opinion of Captain Matlock that gas escaping from this uncapped line had seeped through the floor of the house, and, after collecting in sufficient quantity within the structure, had been ignited by the flame from one of the appliances. The pilot light of the heater, the pilot light of the kitchen stove and the bedroom heater were all burning at the time. Some argument is made on behalf of the defendant gas company that the explosion could have been caused by Surry's careless or improper installation of the kitchen stove or the bedroom heater. However, we are completely in accord with the observation of the district judge in his reasons for judgment that the record does not contain the slightest evidence which would justify such a conclusion. Surry, who was experienced in the connection of gas appliances, testified that he had tested the connections he made for leaks and that all such connections were tight. This testimony was not controverted. *136 We find no reasonable ground for questioning the conclusion reached by the trial judge that the explosion and consequent fire resulted from the collection of gas which escaped from the uncapped supply line.
There are certain other facts to which attention should be called. The testimony of employees of the gas company reflects some disagreement as to the company's custom and procedure relating to discontinuance of service. However, analysis of all of the testimony on this point thoroughly justifies the conclusion that it was the general custom, when gas service was discontinued on the ground of nonpayment of bills, not only to shut off the meter valve but to secure the same by means of a padlock; in other instances, for example where service was discontinued because of a customer's removal from the premises, it appears that the procedure was somewhat casual. The meter valve was turned off, or it was turned off and a seal affixed, or it was turned off and padlocked. In other words, there was no well-established and definitely regulated course of action. It is contended that in some instances, where the meter was padlocked, such devices were forcibly removed; that seals, which were flimsy, unsubstantial metal tags attached by a wire loop, were frequently broken, and that meter valves were opened, either with the intent of using gas illegally or by accident or acts of wanton mischief.
The action of plaintiffs, Surry and Clark, against the gas company is based upon the claim that the accident resulted from its negligence in not securely locking the meter, and its further negligence in failing to notify either the owner or the tenant of the existing danger. There can be no possible ground for dispute as to the complete failure of defendant gas company in these respects.
Surry testified that on Thursday, November 23rd, while he and Katie Clark were cleaning up the premises preparatory to moving their possessions into the house, he had noticed that the gas meter was closed and padlocked. McDermott testified that when he visited the premises the next morning for the purpose of opening the meter, it was neither locked nor sealed. Surry further testified that on the morning of Friday, November 24th, before installing the kitchen stove and bedroom heater, he examined the meter, found the valve open, closed it, performed his installation work, then opened the meter valve and tested the appliances which he had installed. Surry also testified that he had been informed by a neighbor that an employee of the gas company had been on the premises earlier that morning. On the basis of this information, and the further fact that the meter was unlocked, Surry was justified in assuming that the gas service had been provided.
The claims of these plaintiffs against the Fulco group as owners of the rented premises are predicated upon the codal obligations on the part of lessors to their lessees, as set forth in LSA-C.C. Articles 2692, 2693, and more particularly Article 2695.
The principal defense of the gas company is found in the contention that the accident was the result of the negligence of the Fulco group as owners in allowing a supply line on their premises to be open and uncapped. It is further urged that plaintiff, Surry, was guilty of negligence in violating an ordinance of the City of Shreveport which prohibits any person, without specific authority, from opening a gas line at the meter. The members of the Fulco group, as defendants, urge this same act of negligence as against the claims of the plaintiff, Surry. As plaintiffs in the suit against the gas company the Fulco group urges the same charges of negligence relied upon by Surry and Clark.
Under the facts of this case we cannot conceive of any possible question as to the correctness of the conclusion that the explosion and fire was the direct result of the gross and inexcusable negligence of the defendant gas company. The obligation of extraordinary care on the part of *137 one who handles, supplies or distributes an inherently dangerous substance is too well recognized to necessitate citation. However, with respect to the high degree of care required of handlers and distributors of natural gas, we refer to the expressions of our Supreme Court in Naquin v. Marquette Casualty Co. (1963), 244 La. 569, 153 So.2d 395, which referred to and reiterated this principle as previously enunciated in Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627, and Raphael Bros. v. Cerophyl Laboratories, 211 La. 354, 30 So.2d 116.
The conclusion of gross negligence in the instant case by reason of the failure of any attempt on the part of defendant gas company to prevent the opening of the meter supply line by means of a lock, a seal or a blind gasket is inescapable. When it is further considered that an employee of the gas company discovered a dangerous situation, namely a leak in the supply lines furnished by the meter, and no attempt was made to notify the owner or tenant, the degree of negligence is thereby compounded. As noted by our learned brother of the district court, it would appear from this record that the gas company took greater precautions to prevent the use of its product without payment than it did in the interest of protection of life and property.
After urging the liability of the Fulcos as owners of the premises and denying any responsibility on the part of the gas company, counsel cites the case of Loyocano v. Louisiana Power & Light Co. (Orl., La.App., 1936), 165 So. 515, and quotes from the opinion the correct statement of the general rule that a gas company is not responsible for the condition and maintenance of the supply pipes located in a customer's building. We have no hesitancy in endorsing this principle and need only observe that under the facts of the instant case it has no application. It is, however, pertinent to note that the court stated in the very portion of its opinion which was quoted by counsel that a gas company is not liable for injuries caused by a leak in the supply line "* * * of which it has no knowledge." This qualification effectively removes the application of the general rule from the instant case because it is conclusively established that the gas company, through its employee, did have knowledge of a leak.
We can find no justification of the argument which would attempt to shift the primary responsibility for causative negligence in this case from the gas company to the owners of the premises. Under the factual circumstances, we do not find any support for the charge of negligence as against the owners. But if it be conceded, arguendo, that the owners were guilty of some negligence, it is abundantly clear that this was a passive or remote cause which was superseded by the direct, proximate and effective cause of the accident resulting from the negligence of the gas company. This principle was well stated by the Supreme Court of Mississippi in Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34, 145 A.L.R. 1199:
"Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof."
Certain authorities have been cited in support of the argument with reference to the liability of the Fulcos; Sabin v. C. & L. Development Corp. (1st Cir., La.App., 1962), 141 So.2d 482; Green v. Southern Furniture Co. (1st Cir., La.App., 1957), 94 So.2d 508; Mobry v. Frazier (Orl., La. App., 1941), 4 So.2d 566; and Thompson *138 v. Moran (1932), 19 La.App. 343, 140 So. 291. These cases are authority for the well established rule that a lessor is liable for the defective condition of leased premises if such condition was the proximate cause of the accident and all of these cases are distinguishable on the ground that they involved factual circumstances establishing that the defective condition of the premises was the only cause of the damages.
In the instant case the duty of the gas company was three-fold; first, to protect itself from any fault or negligence; second, to protect the owners from possible liability since it had knowledge of the existence of a dangerous situation of which the owners were ignorant; and, finally, to protect the tenant, who was its customer, from the danger of physical injury. We are impressed with the fact that all of these results could have been readily accomplished by a simple notification either to the owners or the tenant, and, thereby, the accident and resulting damage could have been prevented. This case need not be judged by the standard of extraordinary care which is imposed upon the defendant gas company for the result would be the same even if the requirement extended only to a degree of ordinary care. It is possibly redundant to add that the danger was foreseeable.
Authority for the above conclusions is found in the opinion of the court in the Loyocano case, cited supra, in which some of the facts under consideration were remarkably analogous to those of the instant case. By way of illustration we set forth the following applicable extracts:
"Under all the facts which we find here, it was a very simple thing for a trespasser, a malicious mischiefmaker, a child, or some careless person to turn to the `on' position the valve attached to this particular meter with the result that, in the absence of the cut-off disk, gas would flow through the meter and into the apartment of plaintiff. The evidence shows that the valve on such a meter is very easily turned and that a trespasser may turn the gas on without the use of any particular wrench or appliance."
* * * * * *
"We believe that the case may be decided upon the principle that a corporation dealing in a dangerous agency, such as gas, must adopt some reasonable method of safeguarding against its escape and, having adopted such method, must follow it."
It is urged that plaintiff, Surry, was guilty of negligence arising from his violation of the City Ordinance and his failure to check the meter to ascertain whether there were any leaks in the piping system.
After study of the section of the Ordinance relied upon, we entertain some doubt as to whether Surry was actually guilty of a violation thereof. However, we pretermit further consideration of this point for the reason that although the violation of an ordinance may constitute negligence, per se, such negligence is actionable only if it was a legal cause of the accident; Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Bodan v. American Employers Ins. Co. (2nd Cir., La.App., 1964), 160 So.2d 410; Haddox v. Baton Rouge Bus Co. (1st Cir., La.App., 1961), 135 So.2d 142; Ardoin v. Williams (2nd Cir., La.App., 1959), 108 So.2d 817.
In the case before us the violation of the ordinance was neither a primary nor a contributing cause. Surry had every reason to believe that the meter service had been restored. Even if we reject his testimony that the meter valve was open, it must, nonetheless, be resolved that the mere closing of the valve was not sufficient to put Surry on notice that service had not been restored. Nor was Surry responsible for checking the meter for leaks. He was fully justified in the assumption that the line had been checked and opened for use.
*139 Finally, we have given consideration to the issue of quantum. Defendants complain of the excessive nature of the award while plaintiffs urge that the amount allowed was inadequate.
According to the testimony of the attending surgeon, Dr. Sartor, who was a fourth year resident in the Confederate Memorial Hospital, both plaintiffs were admitted immediately following the accident and were found to be suffering from second degree burns located principally on the face, arms and hands of plaintiff, Surry, and the face, hands, chest and forearms of plaintiff, Clark. Plaintiffs were hospitalized for a period of twenty-six days, during which they were under constant treatment which included intermittent periods of debridement, cleaning and dressing of the burned areas. Following discharge from the hospital plaintiff, Surry, was affected with stiffness and serious restriction of flexion of the fingers of the left hand. Plaintiff, Clark, suffered similar extensive contractures of the fingers of the left hand. This testimony was supported by that of Dr. Rounsaville, a specialist in orthopedic surgery.
No medical testimony with reference to the injuries sustained as the result of this accident was tendered by defendants. However, reports of several physicians, including orthopedic specialists who had treated or examined plaintiff, Surry, in the latter part of the year 1956 and the early part of 1957, were offered in evidence on behalf of defendant gas company. These reports relate to an injury to plaintiff's left elbow as the result of an occupational accident in or about the month of October, 1956. We do not find that they have any substantial bearing upon the nature and extent of the injuries received by plaintiff, Surry, in the accident which is the basis of this suit. We have been cited to the award of $5,000.00 made by this court for injuries resulting from first, second and third degree burns, King v. C. N. Mason (2nd Cir., La.App., 1957, writs denied), 95 So.2d 705. We do not find the degree and extent of the injuries sustained by the plaintiff in the cited case to be comparable to those suffered by these plaintiffs. We think the testimony in the case before us preponderates in support of the conclusion that both plaintiffs have and will suffer serious and disabling permanent effects as the result of the injuries received. However, we do not find that the awards made by the trial court are inadequate.
For the reasons assigned, the judgment appealed from is reversed in part and affirmed in part. For the sake of clarity, we think it desirable to amend and recast the judgment to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of King Surry in the full sum of fifteen thousand seven hundred fifty and no/100ths ($15,750.00) dollars, with legal interest thereon from date of judicial demand until paid and all costs of this suit, and an additional judgment in favor of Katie Clark, in the full sum of ten thousand seven hundred fifty and no/100ths ($10,750.00) dollars, with legal interest thereon from date of judicial demand until paid, and all costs of this suit, against Arkansas Louisiana Gas Company and the United States Fidelity & Guaranty Company, in solido; however, the judgment against United States Fidelity & Guaranty Company shall be in solido only up to the limits of the insurance policy filed in evidence in this case.
Plaintiffs' demands against all other defendants are rejected.
It is further ordered, adjudged and decreed that the expert witness fee of Dr. Robert T. Rounsaville be and it is hereby fixed at the sum of fifty and no/100ths ($50.00) dollars, and taxed as costs herein.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Confederate Memorial Medical Center in the full sum of seven hundred sixty and no/100ths ($760.00) dollars, together with legal interest from date of *140 judicial demand until paid, and against Arkansas Louisiana Gas Company and the United States Fidelity & Guaranty Company, in solido.
It is further ordered that costs of this appeal are taxed against defendants-appellants, Arkansas Louisiana Gas Company and the United States Fidelity & Guaranty Company.