269 So.2d 298 (1972)
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant,
v.
TOWN OF VILLE PLATTE et al., Defendants-Appellees.
No. 4006.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1972.
Rehearing Denied December 6, 1972.
Writ Refused January 25, 1973.
*299 Davidson, Meaux, Onebane & Donohoe, by V. Farley Sonnier, Lafayette, for defendant-appellant.
Voorhies, Labbe, Fontenot, Leonard & McGlasson, by D. Mark Bienvenu, Lafayette, for defendant-appellee, Town of Ville Platte.
Lewis & Lewis, by Seth Lewis, Jr., Opelousas, for defendant-appellee, Aetna Casualty.
Frugé & Foret, by Jack C. Fruge, Ville Platte, for defendant-appellee, Fred Phillips.
Daniel J. McGee, Mamou, for defendant-appellee, Edwin Smith.
Preston N. Aucoin, Ville Platte, for defendant-appellee, Town of Ville Platte.
Before SAVOY, HOOD and MILLER, JJ.
HOOD, Judge.
This suit was instituted by Allstate Insurance Company, as the subrogee of its *300 insured, Aurelis Landreneau, to recover the amount which it had paid to Landreneau under a homeowners insurance policy, after the latter's newly constructed home was destroyed by explosion and fire. The defendants are: Fred Phillips (the general contractor who constructed the home); Aetna Casualty and Surety Company (the liability insurer of Phillips); Edwin "Chunk" Smith (the plumbing subcontractor); and the Town of Ville Platte, Louisiana.
The Town of Ville Platte filed a third party demand against Phillips, Aetna and Smith. Aetna filed a third party demand against Smith and the Town of Ville Platte.
Judgment was rendered by the trial court in favor of defendants, rejecting plaintiff's demands and dismissing this suit at its costs. The judgment also dismissed the third party demands of the Town of Ville Platte and Aetna. Plaintiff Allstate has appealed.
The questions presented are: (1) Was the loss or damage sustained by plaintiff or its insured caused by the negligence of any of the defendants? (2) Was Landreneau also negligent, and if so, is plaintiff barred from recovery by the contributory negligence of its insured? (3) Is contributory negligence available as a defense in a suit of this type?
We have decided to pretermit the question of whether the loss or damage was caused by the negligence of defendants, and to consider first whether plaintiff is barred from recovery by the contributory negligence of its insured, Landreneau.
In March, 1970, Landreneau engaged Phillips, a contractor, to construct a home for him in Ville Platte, Louisiana. A written contract was entered into, and Phillips subcontracted the plumbing work for the structure to Smith. On or about July 1, 1970, Phillips informed Landreneau that the construction of the house had been completed, and Landreneau thereupon paid Phillips $12,613.00, that being the full amount due under the contract. Shortly thereafter Phillips paid Smith the amount owed him for the plumbing work which had been done on the building. Phillips testified that a small amount of work remained to be done when the house was paid for. He was to install a peephole in the front door, and a meter loop and gas meter had to be installed connecting the house to the natural gas line. Phillips explained, however, that the plumber usually connects a newly constructed house to the gas line and tests the system before the house is occupied, and that he relied upon Smith to do that. He stated that Landreneau had informed him when the contract price was paid that he would not move into the house until a few weeks later.
Landreneau actually moved into the house on August 4, 1970, or about five weeks after the contract price had been paid. Shortly before he moved, he contacted the Town of Ville Platte and requested that gas service be supplied to the house. Three employees of the gas department of the town thereupon went to this newly constructed home and installed the meter loop and meter, and connected the house to the main natural gas line. After doing so, they opened the valve and noticed immediately that the meter needle began to revolve rapidly, making a clicking sound, which indicated that there was a large gas leak in the house. The house was unoccupied and locked at that time, so the town gas department employees merely turned the valve off and reported the leak to their superior. None of the gas department employees informed Landreneau of what had been done or that a leak was suspected.
While Landreneau, with the aid of members of his family and some friends, was engaged in moving into the house on August 4, he decided to make some coffee, and he discovered then that the gas was not turned on. He thereupon borrowed a wrench from one of his helpers, and proceeded to turn on the gas valve at or near *301 the meter. When he did so he and one of his helpers, Houston Ardoin, noticed that the needle on the meter began revolving rapidly, indicating to both of them that large quantities of gas were flowing into the house. They discussed that unusual circumstance, and Ardoin suggested that it was probably due to the gas filling up the pipes in the house. Landreneau, apparently accepting that explanation, allowed the valve to remain open.
Landreneau re-entered the house, turned on the hot water heater and stove, lit some pilot lights and made some coffee. A little more than an hour later Landreneau smelled the odor of gas in the house, and he concluded that there was a gas leak. He then proceeded to search for the gas leak by placing lighted matches near several gas connections in the house. After placing lighted matches near the gas connections to several appliances without discovering a leak, he then proceeded to the closet which housed the central heating system for the house. While placing a lighted match near the gas connections to this central heating unit, the house exploded and burned to the extent that it was a total loss. Landreneau received personal injuries as a result of that explosion and fire, but he settled his claim for damages for those injuries prior to the trial of this suit.
An investigation made after the explosion and fire revealed that the gas had escaped from an uncapped one-half inch "T" connection in the attic of the house. Gas had flowed freely through that one-half inch opening from the time the valve had been turned on by Landreneau until the time of the explosion. The evidence shows that enough gas flowed through that opening during that period of about an hour and a half to have heated the entire house for six months. The bulk of the gas had been trapped in the attic, and it had begun to seep down into the closet where the central heating unit was located shortly before Landreneau ignited it with a match.
Landreneau was familiar with gas meters and with gas leaks in buildings. He had been employed for several years by Chicot State Park as cabin custodian, and in that capacity he often had turned on valves allowing gas to flow into cabins, and he had checked for gas leaks in the cabins by using lighted matches. He explained that in making such a test a flame from one to four inches high appears where the gas is escaping, and that the flame enables him to locate and to repair the leak.
Landreneau concedes that he saw the gas meter needle revolve rapidly when he turned the gas valve on at his new home, and that he knew that large quantities of gas were flowing into the house. Despite this observation and this knowledge, he allowed the valve to remain open. He did not call the contractor, the plumber or the Town of Ville Platte before proceeding to turn the gas valve on, nor did he call any of them when he detected that there was a leak. He did not check the meter again after first observing its unusual behavior, or even after he smelled gas in the house. He did not turn off the gas or vacate the house after the odor of gas became so strong that he felt compelled to investigate for leaks. He acknowledges that a lighted match will ignite natural gas, that the size of the flame depends on how much gas is present, and that it would be very dangerous to light a match near large quantities of gas. He stated that he would not have lit a match at all if he had known "where the gas was coming from" or "how big of an opening it was coming from."
At the time the explosion and fire occurred, there was in effect a Homeowner's Policy issued by plaintiff Allstate to Landreneau, providing the insured with protection against loss of or damage to this building by fire or explosion. Pursuant to the provisions of that policy, Allstate paid Landreneau $13,000.00 as a consequence of the loss. It then instituted this suit to recover the amount of that payment.
*302 Plaintiff alleges acts of negligence on the part of Phillips, Smith and employees of the Town of Ville Platte. Each of the defendants filed answers denying negligence, and in the alternative they pleaded contributory negligence on the part of plaintiff's insured, Landreneau.
The trial judge found that defendant, Town of Ville Platte, was negligent, but that Landreneau also was negligent, and that plaintiff is barred upon recovery because of its insured's contributory negligence.
Natural gas, because of its highly flammable and explosive character, is a dangerous agency. Those who handle and distribute it are charged with the duty of exercising a degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom. Raphael Brothers v. Cerophyl Laboratories, 211 La. 354, 30 So. 2d 116 (1947). The handler or distributor, however, is not an insurer against damage or injury from the escape of gas from its pipes, unless such an obligation is imposed in its franchise. When no such obligation is imposed by the grant, the handler is liable only for its negligence, provided that the person suffering the injury or loss is free from contributory negligence. Kendall v. People's Gas & Fuel Co., 158 So. 254 (La.App. 2 Cir. 1935); Phillips v. City of Alexandria, 11 La.App. 228, 123 So. 510 (2 Cir. 1929); and Feely v. National Packing Company, 141 La. 903, 75 So. 837 (1917).
It is not contributory negligence per se for a person to use a lighted match in trying to locate a gas leak. In such cases the question of negligence or contributory negligence must be determined by considering all of the facts and circumstances, such as the extent of the leak, the size of the enclosure where located, and the length of time the leak has existed. If a person knows or should know that natural gas is present in an enclosure or that there is a gas leak, and he does not know the quantity of gas which is present or the size of the leak, then we think he would be negligent if he would allow a lighted match to ignite the gas. If he knows that the quantity of gas or the leak is small, however, and he is reasonably justified in concluding that there is no danger of fire or explosion, then he may not be negligent in lighting a match near the gas. The test to be applied is whether the injured person may reasonably conclude, under the surrounding facts and circumstances, that he can safely search for the leaking gas with a lighted match or allow a flame to come in contact with the gas. Henrikson v. Herrin Transfer & Warehouse Company, Inc., 216 La. 199, 43 So.2d 471 (1949); Gaida v. Hourgettes, 67 So.2d 737 (La.App.Orl.1953); Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57 (S.C.Mont.1968); Union Carbide & Carbon Corp. v. Peters, 206 F.2d 366 (U.S. 4 Cir. 1953); Moore v. Jefferson Distilling & Denaturing Co., 169 La. 1156, 126 So. 691 (1930); Geismar v. General Gas Corporation, 182 So.2d 769 (La.App. 1 Cir. 1966); Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964); Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627 (1952); 38 C.J. S. Gas § 44, page 743.
We agree with the trial court that under the facts presented here Landreneau was negligent, and that his negligence was a proximate cause of the accident barring his insurer, Allstate, from recovery. We find that Landreneau was negligent in the following particulars: (1) In turning on the gas without first contacting the general contractor, a plumber or the gas department of the Town of Ville Platte to determine whether it was safe to do so; (2) in allowing the gas valve to remain open after he discovered that an unusually large volume of gas was flowing into the house; (3) in failing to check the gas meter again and to turn off the gas valve, particularly after he detected the odor of gas in the house; and (4) in lighting matches and deliberately trying to ignite the escaping gas.
*303 We distinguish the cases which were cited by plaintiff to support its arguments. In Williams v. American Mutual Liability Insurance Company, 121 So.2d 545 (La. App. 1 Cir. 1960) and in Gerald v. Standard Oil Company of Louisiana, 204 La. 690, 16 So.2d 233 (1943), gasoline fumes were ignited. In each case gasoline was not being stored or kept on the premises where the explosion occurred, and the plaintiffs and decedents had no reason to suspect that there could be any danger of fire or explosion from a lighted match on or in those premises. In Feely v. National Packing Company, supra, the decedent was searching for ammonia gas with a lighted sulphur taper, when the taper unexpectedly came in contact with some explosive "Pintsch" gas which had leaked into the room. The evidence shows that it was safe and usual to test for ammonia gas with a lighted sulphur taper, and that there was no reason for the decedent to know or to suspect that an explosive type of gas had leaked into the enclosure. In Raphael Brothers v. Cerophyl Laboratories, supra, plaintiff's agent allowed a truck he was driving to strike a gas pipe line, breaking the pipe and allowing gas to escape and to ignite, causing damages. The driver was held to be free from contributory negligence, because the evidence showed that he did not know, and had no reason to know, that a gas pipe line was located in that vicinity. The last two cases cited, Loyocano v. Louisiana Power & Light Company, 165 So. 515 (La.App.Orl.1936) and Surry v. Arkansas Louisiana Gas Company, 170 So. 2d 133 (La.App. 2 Cir. 1964), involved explosions of natural gas. In neither case, however, did the plaintiffs detect the odor of gas or have any reason to suspect that there was a gas leak before the explosion occurred.
In the instant suit Landreneau knew that there was a gas leak in the house shortly before the explosion occurred, and he should have known that it was a substantial leak, since he had observed earlier that gas was flowing into the house rapidly before any gas appliances had been turned on. He also knew, or should have known, that gas had been flowing into the house at that rapid rate for about an hour and a half before he smelled it and then began using lighted matches in a deliberate effort to ignite the gas. He could not reasonably have concluded that the leak was small or that only a small amount of gas had accumulated or that it would be safe to light a match. Under all of these circumstances we hold, consistent with the above cited authorities, that Landreneau was negligent, that his negligence was a proximate and contributing cause of the accident, and that his contributory negligence bars plaintiff from recovering.
Plaintiff contends, however, that even if its insured is found to have been negligent, contributory negligence cannot serve as a defense in this case. To support that argument plaintiff relies on Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), where the claimant sustained injuries when he inhaled a highly poisonous gas known as "antimony pentachloride." In that case the plaintiff, a fireman, responded to a call to go to the premises of Delta Southern Tank Corporation. While there he unexpectedly inhaled the above mentioned gas which had escaped from Allied Chemical Corporation's plant, located adjacent to Delta. Plaintiff instituted a tort action against Allied, and the defendant resisted on the grounds that plaintiff was contributorily negligent in failing to wear a gas mask. Our Supreme Court held that the storage of such a dangerous and highly poisonous gas by Allied was an ultra hazardous activity, and that Allied was liable for the damages caused by the escape of that gas, even though the evidence showed that it had not acted negligently or imprudently. The court also held that "This case is not a case where negligence is an ingredient of fault, and contributory negligence is not a defense."
We distinguish Langlois from the instant suit, in that here we are concerned with natural gas. Our courts have held repeatedly *304 that although natural gas is dangerous, the handler or distributor of that gas is not held to strict liability for damages resulting from its escape. Instead, liability for such damages rests upon proof of negligence on the part of the handler, and contributory negligence may be pleaded as a defense in such an action. See Feely v. National Packing Company, supra; Heatly v. E. H. Reeder Construction Company, 165 So.2d 651 (La.App. 1 Cir. 1964); Phillips v. City of Alexandria, supra; Kendall v. People's Gas & Fuel Co., supra; Bayou Materials, Inc. v. City of Donaldsonville, 192 So.2d 373 (La.App. 1 Cir. 1966); and Raphael Brothers v. Cerophyl Laboratories, supra.
In Feely v. National Packing Company, supra, our Supreme Court, quoting from 12 R.C.L. 905, said:
"It is a well established rule that a higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property, and in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent the escape of gas from its pipes commensurate to the danger which it is its duty to avoid, and if it fails to exercise this degree of care and injury results therefrom, the company is liable, provided the person suffering the injury either in person or in property is free from contributory negligence."
And in Bayou Materials, Inc. v. City of Donaldsonville, supra, our brothers of the First Circuit Court of Appeal stated:
"However, a city engaging in the distribution and sale of natural gas, in a proprietary capacity, is not an insurer of its customers. Proof of an explosion of itself is not sufficient to make the city liable. The plaintiff must allege and prove that want of care on the part of the city, acting through its servants or agents, was the direct and proximate cause of the resulting damage unless the plaintiff be relieved of proving a chain of causation by some rule of law. . .
". . . a plaintiff must allege and prove that the city, acting through its agents, was derelict in exercising the care required of it and failed to protect him from a foreseeable injury."
Our conclusion is that contributory negligence may be urged by defendants as a defense in this action. We have held that Landreneau was negligent and that his contributory negligence bars plaintiff from recovering.
In view of the conclusions which we have reached on the issue of contributory negligence, it is unnecessary for us to consider the question of whether any of the defendants were negligent.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.