441 So.2d 803 (1983)
Conrad D. WIGGINS, Plaintiff-Appellee,
v.
ARKANSAS LOUISIANA GAS COMPANY, Defendant-Appellant.
No. 15,843-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
Rehearing Denied December 22, 1983.
*804 Emmons, Henry, Reeves & Stokes, Jonesboro, by Joseph A. Reeves, Jr., Houston, Tex., for plaintiff-appellee.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for defendant-appellant.
Before PRICE, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Arkansas-Louisiana Gas Company appeals a judgment awarding Conrad D. Wiggins damages in the amount of $106,174.50 for burn injuries sustained in a natural gas fire and explosion at the Jamestown Baptist Church on November 27, 1968. The pivotal issues presented by this appeal are: (1) Should Wiggins' suit have been dismissed as abandoned for lack of prosecution? (2) Did the trial court err in determining that Ark-LaGas was liable for Wiggins' injuries? and (3) Are the damages awarded adequate for the injuries suffered? For the reasons hereinafter stated and for those reasons given by the trial court which we incorporate by reference and summarize, we affirm.
During the Fall of 1967, members of the Jamestown Baptist Church in Jamestown, Louisiana, with the assistance and under the supervision of ArkLaGas employees, converted from a system fueled by butane gas to one fueled by natural gas. ArkLa-Gas had located a two inch main line steel natural gas transmission line eight or ten feet from and parallel to the two laned blacktopped road in front of the church which transmitted natural gas under pressure of twenty-one pounds. At each point where there was to be a service connection with this line, the contractor installed a "T" pipe on the line. For each service connection, ArkLaGas customarily furnished the meter and the pipe between the steel "T" and the meter connection as well as labor and materials. Customarily, the meter was placed at or near the end of the "T". Accordingly, the pressure of gas which passed through the regulator and the meter was reduced from 21 pounds to approximately 6 to 8 ounces. As is reflected in the diagram below, the service connection for the church deviated from this customary practice:
*805 
It appears that ArkLaGas' supervisor-employee, who assisted with the connection of the church's service, changed the location of the meter from the point of the "T" (Site A) to a point some fifty feet away adjacent to the northeast corner of the church (Site B) in order to protect the meter from heavy traffic in the church parking lot. Additionally, he recommended that plastic pipe rather than steel pipe be utilized between Site A and Site B resulting in twenty-one pounds of pressure being placed on the plastic line which ran under the church's parking lot. No special precautions were taken in the laying of this pipe to the meter which connected to the pre-existing butane lines of the church.
In early November, 1968, members of the church complained of burning eyes. Thereafter, the church's outlets were checked and no leaks were found. On Wednesday, November 27, 1968, the natural gas fire and explosion made the subject of this suit occurred. The church was completely destroyed and plaintiff was severely burned.
This suit was filed November 20, 1969. Trial was held in March and April of 1980. Initially, in written reasons, the trial court rejected the demands of plaintiff; however, a new trial was granted after which the trial court reversed its earlier ruling. In written reasons for judgment, the trial court found that the natural gas leak which caused the fire and explosion occurred on the gas company's side of the meter thereby rendering ArkLaGas liable for plaintiff's injuries.
ArkLaGas appeals assigning the following errors:
(1) The trial court improperly overruled Ark La's rule to show cause why the suit should not be considered abandoned.
(2) The trial court improperly concluded that Ark La Gas was guilty of negligence which was the legal cause of the accident.
Wiggins timely answered this appeal requesting an increase in damages.
ArkLaGas first argues that this suit should be considered abandoned under La.C. C.P. Art. 561. The suit was actually filed November 20, 1969 and answered on December 5, 1969. Interrogatories were filed December 22,1969 and answered January 3, 1970. Defendant contends that no further steps were taken in the prosecution or defense of this action until June 8, 1976 when a pre-trial order was filed. It is true that no further activity is reflected within the suit record between January 3, 1970 and June 8, 1976. Therefore, the disposition of this issue is controlled by the effect of a motion and order dated November 8, 1974, prepared by Wiggins' counsel and signed by the trial court which set the case for trial and ordered a pre-trial conference. This document was given to the clerk on November 8,1974 and contains the following handwritten notation "Filed November 8, 1974, H. Rupert Sledge, Clerk." However, it was never physically placed in the suit record but remained in the possession of the clerk. No copy was served on defense counsel nor was a bond amount fixed in the order. ArkLaGas argues that because the order was not filed in the suit record it cannot be *806 considered to be a step in the prosecution of the suit.
The trial court ruled that the motion and order constituted a step in the prosecution of the case and dismissed ArkLaGas' rule to show cause why the suit should not be considered to be abandoned. This court denied a subsequent writ application stating: "The judgment of the district court is correct." We have found no compelling reason to alter this court's earlier ruling in this matter, and in fact, have found additional support for the ruling in Ellzey v. Employer's Mutual Liability Ins. Co., 388 So.2d 843 (La.App. 2d Cir.1980) which held that delivery of a document to the clerk of court constitutes a filing under the provisions of La.C.C.P. 253 sufficient to constitute a step taken before the trial court in the prosecution of the action and that the failure of the clerk to comply with his responsibility to place the document in the record cannot detract from the actions of the party to constitute an abandonment of the prosecution of a suit. Accordingly, this specification of error is without merit and the ruling of the trial court was correct.
The thrust of ArkLaGas' argument on appeal is that Wiggins failed to prove by a preponderance of the evidence that the explosion and fire resulted from the negligence of ArkLaGas and that the trial court's finding is manifestly erroneous because it is not supported by the evidence. ArkLaGas concedes that the duty of a distributor of natural gas is high and that it consists of safely furnishing natural gas to its meter and maintaining the meter in good working order; but that absent any knowledge of a dangerous condition existing on the customer's side of the meter, no further duty is owed. In fact, when specifically questioned at argument, ArkLaGas' counsel conceded that if the gas leak which caused the fire and explosion was proven to be on ArkLaGas' side of the meter, that ArkLaGas is liable.
The rule is well established that the degree of care owed others increases in relation to the increase of inherent danger. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945); Reggio v. Louisiana Gas Service Company, 333 So.2d 395 (La.App. 4th Cir.1976); Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3d Cir.1974).
It is undisputed that the explosion and fire were caused from an accumulation of natural gas in the attic and ceiling of the church. Because of its highly inflammable and explosive character, natural gas is recognized jurisprudentially as an inherently dangerous instrumentality and those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character for the protection of the public from any foreseeable injury. Reggio v. Louisiana Gas Service Company, supra. Accordingly, ArkLaGas owed the duty to safely furnish natural gas to its meter and to maintain the meter in good working order. Huggins v. Hartford Accident and Indemnity Co., 271 So.2d 876 (La.App. 4th Cir.1973); Surry v. Arkansas Louisiana Gas Company, 170 So.2d 133 (La.App. 2d Cir.1964). Included within that duty is the duty to adopt some reasonable method of safeguarding against the escape of its dangerous instrumentalitythe gas. Reggio v. Louisiana Gas Service Company, supra.
Wiggins contends that the totality of the evidence clearly proves that ArkLa-Gas failed to fulfill its high duty of care. In support of his argument, Wiggins points to the evidence that the service connection was not made in accordance with ArkLa-Gas' customary practice in that the location of the meter was changed from the usual point near the highway right of way to a point adjacent to the church and that plastic rather than steel pipe was recommended for use in this situation where twenty one pounds of pressure would be placed on the line which ran directly under a heavily used parking lot. It is further contended that the evidence shows that the ground was not properly prepared for the use of this plastic line, that the line was not properly tested and inspected, and that it was simply buried after which it was virtually forgotten. Wiggins argues that it was proven by a *807 preponderance of the evidence that the explosion was the result of a gas leak which did not occur within the church's system of distribution but occurred at the connection of the plastic pipe to the "T" connection installed and connected by ArkLaGas on its side of the meter.
The trial court found that Wiggins had proved by a preponderance of the evidence that the leak that caused the fire and explosion resulting in the injuries existed "upstream" of the church's meter, i.e., on defendant's side of the meter. After reviewing the record, we conclude that the totality of the evidence supports such a finding and that it is not clearly wrong. The testimony preponderates that the leak occurred where the plastic line connected to the ¾ inch steel "T" attached to the main line and that the gas which was under 21 pounds of pressure escaped and migrated through the subsurface soil in the direction of the church to the season cracks in the church slab going up the inside and outside walls of the church into the attic and sanctuary where it gathered until ignited. More probably than not, the leak occurred because the plastic line was unable to withstand the stress placed upon it by the soil conditions coupled with the traffic on the driveway in the absence of special soil preparations and pressure testing which were not accomplished at the time of the installation of the line. While the evidence before the court was largely circumstantial, it was sufficient to support a conclusion that this was the cause of the fire and explosion and that ArkLaGas should have known of the hazard and taken reasonable precautions to prevent the catastrophe. See Reggio v. Louisiana Gas Service Company, supra. Accordingly, as a natural gas distributor, ArkLa-Gas breached its duty to safely furnish natural gas to its meter located adjacent to the church and this breach of duty was the legal cause of Wiggins' injuries. Therefore, the trial court's finding of liability on the part of ArkLaGas is not clearly wrong nor manifestly erroneous.
Unquestionably, Wiggins was seriously burned as a result of the fire and explosion which caused third degree burns over 24 to 29% of his body. In summary, skin grafts were necessitated on Wiggins' hands and face, his ear was deformed and his face retained scar tissue and discoloration. However, the treating physician did not consider the ear deformity or the facial scar tissue so extreme as to recommend plastic surgery. Certainly, the injuries suffered were extremely painful. On three occasions, Wiggins was hospitalized for a total of thirty-eight days. As a direct result of his injuries, Wiggins was unable to work for thirty weeks, and he continues to be unable to participate or enjoy certain activities such as hunting and fishing which he actively participated in prior to the accident.
Based on the nature and degree of the injuries suffered, the trial court awarded general damages in the amount of $100,000 plus special damages in the amount of $6,174.50 for lost wages and medical expenses.
The function of an appellate court in reviewing a damage award is not to decide what it considers to be an appropriate award on the basis of the evidence, but rather only to review the exercise of the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); La.C.C. Art. 1934(3). While the reviewing court might disagree with the amount of the award, it should not substitute its opinion for that of the trier of fact but rather should limit its determination to whether the trial court abused its much discretion. Kalmn, Inc. v. Empiregas Corp., 406 So.2d 276 (La.App. 3d Cir.1981). Our review of the factual basis on which the award for general damages was made discloses no abuse of the trial judge's great discretion.
Accordingly and for the foregoing reasons, the judgment of the trial court is affirmed in its entirety at the cost of the appellant.
JUDGMENT AFFIRMED.