167 So.2d 408 (1964)
Dr. Charles H. MOSELY et al.
v.
SEARS, ROEBUCK AND COMPANY.
No. 6197.
Court of Appeal of Louisiana, First Circuit.
July 1, 1964.
Rehearing Denied September 30, 1964.
*409 Jimmie R. Major and Elven E. Ponder, Baton Rouge, for appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie, by Calvin E. Hardin, Jr. and Roger M. Fritchie, Baton Rouge, Kantrow, Spaht & Kleinpeter, by Robert L. Kleinpeter, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
HERGET, Judge.
This is a suit for damages arising out of a fire which partially destroyed the home of Dr. Mosely and certain contents and appurtenances thereto. The plaintiffs are Dr. Charles H. Mosely, Agricultural Insurance Company (the insurer of Dr. Mosely's residence for fire damage and certain incidental coverages resulting from fire damage to dwelling) and Birmingham Fire Insurance Company of Pennsylvania (the insurer of personal effects and other contents located in the fire damaged dwelling of Dr. Mosely). The defendant is Sears, Roebuck and Company, hereinafter sometimes referred to simply as "Sears".
After trial on the merits, for written reasons assigned, the Trial Court on September 9, 1963 rendered judgment in favor of Plaintiffs against the Defendant and judgment was signed thereon on September 10, 1963 as follows: in favor of Agricultural Insurance Company for $37,222.36, with 5% per annum interest thereon from date of judicial demand (August 23, 1963) until paid; in favor of Birmingham Fire Insurance Company of Pennsylvania for $8,243 and in favor of Dr. Charles H. Mosely in the sum of $12,936.70, with 5% per annum interest on the principal of both sums from date of judicial demand, August 23, 1962, until paid. The Court further rendered judgment fixing the fees of certain experts who testified in the case and taxed such as costs. Defendant to pay all costs of these proceedings.
The case is before this Court on a suspensive appeal by Sears, Roebuck and Company, defendant, from the judgment, and on the answer to the appeal by Dr. Charles H. Mosely wherein he seeks an increase in the award of judgment to him.
Plaintiffs allege a heating unit had been installed in the basement of Dr. Mosely's home by Defendant in 1957. That Sears warranted the heating unit itself and the installation thereof for use with safety but that during the afternoon on the 20 of October, 1961 an agent, servant or employee of Defendant performed certain services to said unit to place it in readiness for seasonal heating use and shortly thereafter a fire occurred in and around the heating unit which resulted in causing the damages for which remuneration is sought by Plaintiffs. Plaintiffs then assert the plea of the doctrine of res ipsa loquitur.
Alternatively Plaintiffs allege defective installation, particularly, but not exclusively, in the following respects:
"(a) A limit switch, sometimes called a safety control, was removed from its approved location in the heater bonnet and was reinstalled in the air duct above the bonnet with a slide damper between the duct and the bonnet;
"(b) The said slide damper which was placed in the said heating unit was located in such a position as to make it difficult to find, and no signs or other *410 markings were properly placed to indicate the location of said slide damper;
"(c) The said installation was otherwise defective in other respects not here detailed."
In the further alternative Plaintiffs allege the negligence of the employees of Defendant in failing to discover a condition that could have caused the fire upon Defendant's inspection of the heating system after its installation.
Still in the alternative, Plaintiffs allege the Defendant, through its agent, was negligent in placing the heating unit in service and leaving a damper located or placed between the heating bonnet and the air duct closed, which would result in the unit becoming overheated and prevent the safety mechanism from functioning properly.
They allege further, alternatively, Defendant, through its agent, was negligent in failing to make certain the heating unit was functioning properly before leaving the premises on October 20, 1961.
In making this installation in 1957 a common plenum was fabricated and installed by Defendant to connect the heater and the central air conditioner to the duct work of the house. Two dampers were provided to direct the heat and the cold air through the ducts. About 5 o'clock in the afternoon of October 20, 1961 Mr. Lew Cazes, an employee of Sears, converted the mechanism so as to turn the heat on. On previous occasions this service had been performed by another employee of Defendant. Mr. Cazes, having never performed this service in the Mosely home before, was of the opinion the unit was provided with two dampers. He found one controlling the cool air, felt around for the heater damper and could not find one, did not check the limit control switch located in the plenum, lit the pilot burner, activated the controls in the house and satisfied himself from such that the heater was properly functioning. Mr. Cazes, the last person in the heater room, then left the premises. Though Mrs. Mosely was at home during this period, she left approximately ten minutes after Mr. Cazes' departure and the home was unoccupied.
About 7 o'clock that evening a neighbor observed smoke billowing and flames emitting from inside the Mosely home on the side nearest to which the heating unit was located in the basement and the fire department was notified.
Plaintiffs called as their witness Frank P. Domma, Chief of the Fire Prevention Bureau of the Baton Rouge Fire Department. Chief Domma related that he had been with the Department some 25 years; his duties consisted of investigation of the causes of fires, their prevention and promoting educational programs for such purposes and he had received essential training in special schools, qualifying him for this work. The fire which caused this damage and/or destruction occurred on Friday night. On Sunday morning Chief Domma visited the premises and made an inspection. On Monday morning he conducted an investigation as to the causation. From his investigation it was his opinion the fire originated in the basement, around the plenum above the heater. His conclusion as to the point of origin resulted from his inspection of the burned area in the basement. He related he took four distal points where there was least damage in the burned portion and worked to the central point of greatest damage and in doing so the four lines converged on the plenum of the heater. Above the heater were floor joists and flooring for the residence above formed the ceiling of the basement. The central portions of these joists over the heater were completely burned and the ends remaining extending outward therefrom were charred but somewhat intact. From this observation he concluded the point of most intense heat had been directly over and around the plenum of the heater. He investigated other appliances located in the basement and found no evidence of anything else *411 to which he could attribute the causation of the fire. Photographs depicting the interior of the basement were made and offered in evidence. Chief Domma found no evidence of a gas leak and it was his opinion there had been no explosion. His opinion was that the cause of the fire resulted from the central heating unit becoming overheated. The Chief related Mr. Cazes stated to him he checked the main burner in the heater at 4:30 p. m. on Friday, October 20, 1961 and left the Mosely home at about 4:50 p. m. The Fire Department recorded the time of the report of the fire at 7:48 p. m.
Defendant set up a heater model in the Shilstone Laboratories like the one installed in the Mosely home. Materials of the same manufacturer comparable to those used in its installation in the Mosely home were used, a new plenum box used and every effort exerted to obtain all comparables available to Defendant to conduct a demonstration with the heater damper closed to prove by certain tests that sufficient heat could not be generated in the plenum to cause a fire. From such tests Defendant's experts concluded the fire in this instance could not have been caused by the overheated plenum. Defendant introduced evidence showing that the electrical supply lines to the heater had been shorted out and there were definitely beads or nodules on the ends of both wires. From this, Defendant's experts concluded such condition had been caused by a short in the wires which could have ignited into a flame and set the house on fire. From their tests they were of the opinion the closed damper on the heater did not cause the fire.
The Trial Judge was of the opinion the fire resulted from the Defendant's agent failing to open the damper and check the controls on the heating unit where, in his opinion, the fire originated. Therefore, Defendant's negligence was the proximate cause of the fire. He was of the opinion the doctrine of res ipsa loquitur was inapplicable, holding:
"At least two of the essential requirements for the application of the doctrine are absent here. First, it is not disputed that defendant was guilty of negligence in that its agent lit the furnace and placed it in operation without opening the damper and without checking the various safety controls attached to the heating unit. Second, any other possible origin or cause of the fire was solely associated with situations and conditions over which defendant had no control, despite the fact that it had installed the heating unit, moving it from another location, some four and one half years prior to the fire. It is, therefore, my opinion that plaintiff's right to recover must stand or fall on the question of whether or not defendant's negligence in failing to open the damper and check the controls was a proximate cause of the fire."
Learned counsel for Appellant maintain the Trial Judge was in error in concluding the evidence revealed the proximate cause of this fire resulted from the negligence of Defendant's agents, maintaining such conclusion was predicated upon Plaintiffs' expert's conclusion to that effect based on his finding the fire originated around the plenum. From our review of the testimony we are of the opinion the evidence preponderates in favor of Plaintiffs' contention and the proximate cause of the fire was the negligence of the agent of Defendant in lighting the gas pilot burner to the heating mechanism without opening the damper controlling the heat. While it may be argued the evidence does not conclusively prove this fact, we are of the opinion it suffices to justify this conclusion. Naquin v. Marquette Casualty Company, La.App., 143 So.2d 122.
Furthermore, as will appear from his reasons for judgment (supra), the Trial Judge was of the opinion the doctrine of res ipsa loquitur is inapplicable to the factual situation here involved. From our *412 review of the evidence we are convinced the circumstances depict a strikingly similar factual situation to the case of Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704. Therein the doctrine was applied in an instance where a heater installed in the attic by defendant was held to have been the causative factor in a fire which destroyed the home of plaintiff. The majority gave application to the doctrine of res ipsa loquitur, discarding the contention same was not applicable inasmuch as the instrumentality which caused the accident was in the possession of plaintiff and was functioning properly approximately thirty-nine hours before the fire. Here, as in that case, the evidence reflects the agent of Defendant was the last one to tamper with or activate the heater and this fire occurred some two hours after the agent's action. The evidence reflects none of the occupants of the Mosely home in any way tampered with the mechanism. In fact they all were absent from the house ten minutes after Defendant's agent had performed the services to the heater and departed. It appears to us to be more than a coincidence that the fire began within two hours after such action by the agent unless same resulted from the installation of the heater; the failure of the mechanism to operate properly or because of the negligence of the Defendant in failing to open the damper.
Upon giving application to the doctrine of res ipsa loquitur the burden then shifts to the Defendant to prove the accident resulted from causes other than ones for which it was responsible. While we are impressed with the tests made by Defendant in seeking to duplicate the conditions existing in the basement of the Mosely home and maintaining the fire was shown to have resulted from electrical wires which had shorted without any fault on the part of Defendant, a review of the evidence relating to the tests make it apparent the same conditions existing in the basement of the Mosely home could not be duplicated and do not convince us that the short ensued from causes other than the overheating of the heater. Likewise we are not convinced Defendant has shown such circumstances to have been the proximate cause of the fire. We therefore conclude Defendant is responsible for the damage sustained as a result of the fire.
The Trial Judge awarded a total of $58,402.06, itemized as follows:

"Loss and damage (P-10) $14,702.61
"Fur cape 443.00
"Restoring residence 40,408.55
"Watchman 33.25
"Cartage 457.95
"Shrubbery 300.00
"Policing premises 50.00
"Painting bricks and masonry 500.00
"Cleaning and pressing clothing 203.08
"Moving from and to residence 475.00
"Plastic porch covering 48.12
"Rental of other living quarters 780.50
 __________
 $58,402.06."

The item of $14,702.61 results from loss and damage to personal property. A list with valuations of the articles claimed was offered in evidence as P-10 and the Trial Judge meticulously examined same and arrived at the total of $14,702.61. In doing so he disallowed a claim of $200 representing 50 tennis trophies which had *413 been won at tournaments. The Moselys had valued these at $4 each. It is obvious such articles were not for sale and do not have a market value, but in giving consideration to the "blood, sweat and tears" which were expended to obtain same, we feel Plaintiff is entitled to recover this nominal amount.
The item of $40,408.55 results from accepting the figures of Mr. Joseph M. Myatt, a building contractor who made a detailed itemized estimate of the cost of restoring the residence of Dr. Mosely to its former condition and was paid for same by the insurance companies. In actuality the final contract price for the repair and restoration of the house, not including an architect's fee, was $46,902.37. Though certain changes were made in the house in its restoration, suit was entered by Plaintiff only for the amount based on the cost of restoring the house to its original condition. Mr. Myatt specifically testified the figure given by him represented a reasonably fair cost of restoring the home to its condition existing before the fire. We are of the opinion Plaintiffs were entitled to reimbursement for such restoration, disregarding any consideration of allowance for depreciation. Hebert v. T. L. James & Co., La.App., 72 So.2d 754; Maryland Casualty Company v. Rittiner, La.App., 133 So.2d 172.
The Trial Court disallowed the claim of Plaintiffs for 10% of Mr. Myatt's estimate of the restoration cost as the fee of the architect, giving as its reason Myatt himself testified he could have restored the residence at the estimated cost without the services of an architect and the Court knew of no authority justifying the allowance of such claim. Conceivably such restoration could have been made without the services of an architect and granted Dr. Mosely did not have an architect in the building of his home originally, nonetheless upon the restoration he did employ an architect and paid him for his services as such and it appears to us to be not only reasonable but advisable that a contemplated expenditure of so much money makes necessary the services of an architect to insure the work being done properly. This, to us, was as necessary as the amount expended for the carpenters and laborers. Accordingly, an award therefor of $4,040.85 is warranted.
Both Agricultural Insurance Company and Birmingham Fire Insurance Company of Pennsylvania paid to Dr. Mosely the respective amount for which judgment was rendered in its favor and each was granted a subrogation by Dr. Mosely. Agricultural Insurance Company was granted judgment against Defendant for the sum of $37,222.36 plus interest thereon at the rate of 5% per annum from date of judicial demand (August 23, 1963) until paid and for all costs of these proceedings. The record reflects judicial demand was made by this Plaintiff on August 23, 1962 and the bracketed date supra is evidently a clerical error.
For these reasons the judgment against defendant, Sears, Roebuck and Company in favor of these several Plaintiffs is amended and affirmed as rendered, viz: in favor of Agricultural Insurance Company, affirmed in the principal sum of $37,222.36 and amended so as to correct the date from which interest is due; in favor of Birmingham Fire Insurance Company of Pennsylvania, affirmed in the principal sum of $8,243; and it is ordered, adjudged and decreed that the award in favor of Dr. Charles H. Mosely be amended so as to render judgment in his favor in the principal sum of $17,177.55. All awards to bear 5% per annum interest in the principal sums from the date of judicial demand, August 23, 1962, until paid.
Amended, rendered and affirmed as rendered at Defendant's costs, including the cost of this Court.