BAILES, Judge.
This is an action instituted by plaintiff, Bayou Materials, Inc., against the City of Donaldsonville and its public liability insurer, Houston Fire & Casualty Insurance Company, defendants, to recover the value of its inventory of merchandise destroyed in an explosion and fire which consumed its place of business in Donaldsonville, Ascension Parish, Louisiana, on the early morning of January 12, 1962. The defendant, City of Donaldsonville, is the proprietor of the natural gas distribution system which furnished natural gas to plaintiff.
Consolidated for the purpose of trial was the companion case of St. Paul Mercury Insurance Company et al. v. City of Donaldsonville, 192 So.2d 380, in which a separate opinion and judgment will be rendered.
In due course of the proceedings in the trial court, the defendants herein implead-ed by appropriate third party pleadings McWane Cast Iron Pipe Company, as the supplier of pipe used in the construction of the system initially, and J. B. McCrary Company, Inc., which allegedly supplied the engineering design, labor and materials for the construction of the gas distribution system. During the progress of the action, the third party action was dismissed against these third party defendants. However, subsequently the plaintiffs, in both actions, i. e., Bayou Materials, Inc., and St. Paul Mercury Insurance Company, et al, impleaded McWane Cast Iron Pipe Company and J. B. McCrary Company, Inc., as joint tortfeasors with the original defendants. Without burdening this opinion with needless discussion in this respect, suffice it to state that there was utterly no proof whatever of any negligence on the part of either McWane Cast Iron Pipe Company or J. B. McCrary Company, Inc., and as to these defendants the trial court dismissed them as defendants. The plaintiffs have not appealed from this judgment of dismissal. Further, neither of the original defendants assert any contention against these third party defendants. Accordingly, no further discussion or reference will be made to these parties.
The trial court rendered judgment in favor of plaintiff and against the City of Donaldsonville and Houston Fire & Casualty Insurance Company, in solido, in the amount of $10,000, the amount of stipulated damages of plaintiff. From this judgment, defendants appeal.
We are favored with a very well reasoned written opinion by the learned trial judge wherein all the pertinent facts surrounding this explosion and fire, and law applicable thereto have been fully dis *375 cussed and considered. We quote and adopt it as our reasons, to-wit:
“Bayou Materials, Inc., engaged in the selling of building supplies, seeks money damages against the City of Donaldsonville .and its liability carrier, Houston Fire and ■Casualty Insurance Company, for the loss ■of its stock of merchandise, as a result of an explosion and fire, which occurred .about S o’clock A.M. on January 12, 1962. The parties hereto have stipulated that in •the event of liability, the stock of merchandise is to be valued at the sum of $10,000.-00.
“The store and lumber shed in which the ■stock was contained was leased by plaintiff from A. Wilbert’s Sons Lumber and Shingle Company. These premises were located on the northeast corner of the intersection of Railroad Avenue, which •runs north and south, and Division Street, which runs east and west in the City of Donaldsonville, Louisiana. The front building measured about 20 feet fronting Railroad Avenue on a depth of about 60 feet along Division Street. The building rested upon a continuous concrete chain wall or foundation about two feet in height of which approximately eight inches were below ground level. The sides of the 'building fronting on the streets were of stucco which overlapped the foundation. "The other sides consisted of siding which .also overlapped the foundation. Between the sidewalks of the two streets, a concrete slab had been poured between the sidewalks and the building. On the north side and touching the building was a paved ■sidewalk measuring 4.57 feet in width and in the rear of the building was a concrete slab used as a parking area. There were no breaks or openings of any kind along the perimeter of the foundation. The floor of the building was constructed of center -match pine. A partition had been erected .at about the center of the store dividing it ■into two rooms of approximately 20 x 30 feet each. The front room was the office .and display room and the rear room was .a stock room.
“A gas main in the city’s distribution system was laid along Railroad Avenue in front of the store building under the 4 inch concrete sidewalk at approximately 1 foot from the street curbing and at a depth of 30" from the surface. This main was of cast iron pipe measuring 2J4 inches in diameter. Connected to the main was a service line of 1J4 inches which entered the premises of plaintiff. This line was located along the outer edge of the sidewalk on the north side of the building and ran directly from the main to a distance of 7 feet from the front of the building to the rear. At this point, a riser was connected to the service line where the gas entered the regulator and the meter. Below the regulator was located a cut off valve. After leaving the meter, the house line ran under the sidewalk and up the side of the building above the floor level. Two outlets then ran into the building to service space heaters located along the northern walls of the two rooms.
“Under the intersection of the sidewalks of Railroad Avenue and Division Street at a distance of about 1 foot from the curbing of Railroad Avenue and about 14 feet from the front of the building was located a gas cut-off valve in the city main. This valve was covered with a metal saddle type housing, the bottom of which was opened so as to cover only the upper half of the pipe. About seven years previous to the fire, Railroad Avenue had been widened and repaired. To permit the housing to reach the new surface of the sidewalk, a piece of terra cotta had been inserted on top of the metal housing. On the top of this extension, a valve cover had been installed so as to be flushed with the service line entering the premises. Its purpose was to cut off the gas from an area along the main when a similar valve at the other end of the area was also closed off.
“For four or five weeks prior to January 12, 1962, numerous witnesses testified they smelled the odor of gas within the premises. One witness testified that he smelled gas *376 on the outside across Railroad Avenue from the premises. About three weeks prior to the fire, plaintiff’s President and Manager, Mr. Andrew Montero, complained to the gas department of the city of the smell of gas. Following this complaint, the city sent its maintenance man, Mr. Ruiz, to investigate. He checked the entire system of the plaintiff from the meter up to and including the heater without detecting any leaks. He detected an odor of gas near the regulator and installed a new regulator. The plaintiffs customers continued to complain of the odor of gas. At the request of Mr. Montero, the gas system from the meter through the premises was tested for leaks by Mr. Ruffin Lassere, maintenance superintendent for Thibaut Farms, Mr. Thomas Savoia, a member of the city’s volunteer fire department and by Mr. Edward J. Berot, a plumber, all of whom were competent by reasons of their occupation to determine the existence of leaks. They all testified they smelled the gas but they could not detect any leaks after checking plaintiff’s gas system. Mr. Montero thereafter complained to the city again on two separate occasions without any action being taken by it. Finally on the 4th of January he notified the city that if they would do nothing to cut off his service. Thereupon, Mr. Lucien Bacala, superintendent of the gas department, accompanied by Mr. Ruiz came to plaintiff’s place of business and retested the lines and heaters of the premises. Though no leaks were detected by them Mr. Montero, insisted the gas service be cut off. This was done. Mr. Montero testified he continued to smell gas while the service was disconnected. On the following day, Mr. Ruiz returned and reported that he had detected a leak in the elbow underground connecting the service line with the riser near the base of the gas meter. A new elbow was installed without cutting off the gas, since this elbow was located below the service cut-off valve on the riser. The gas could have been cut off by closing two valves of the main line which would have resulted in a disruption of service to many premises located between the two valves. After installing the new elbow, gas service was resumed to plaintiff’s, building. Odor of gas continued to be present within the building intermittently thereafter. Two days before the fire Dr. Roy Folse, a physician and surgeon, went into the building and detected the odor of gas.
“At five o’clock on the after noon of January 11, 1962, Mr. Montero closed and locked the store building. He testified that the space heater in the rear room was turned off while the space heater in the-front office was lowered and left burning..
“At about 10 minutes to S on the morning of January 12, 1962, Mr. Lucien Bacala, the-gas superintendent, who lived near the store,, testified that he was listening to his radio-when he heard and felt a terrific explosion.. He went to a window but could see nothing.. He turned and by the time he got to his. back door a second explosion occurred. Going to the front of his home he could see that Bayou Materials was on fire. He grabbed a wrench and went to the fire with the intention of closing the service line.. However, that valve had been blown completely off and the gas was burning from the end of the service line. At that time the-entire building was on fire.
“Mr. Thomas Savoia went to the fire as a member of the Fire Department. When he-arrived it was still dark. The office or front part of Bayou Materials was blazing away. He noticed a blue flame, some 4 or 5 inches in height, burning along a crack running the 42 foot width of the concrete pavement of Railroad Avenue. This crack extended from the curb in front of the building to the curb on the opposite side of the street. By the time water was obtained' on the fire hoses, the building had been reduced to rubble. After moving some burned timbers, the fireman then noticed a blue flame burning through the ashes within the perimeter of the foundation upon which the building had rested. Some 5 min *377 utes after putting it out, the blue flame rekindled and had to be again extinguished.
“Following the fire an examination of the premises was made by Mr. A. D. Smith, Deputy State Fire Marshall. The valve 'housing and a portion of the concrete sidewalk covering the gas main in front of the building was removed. A crack measuring approximately 44e of an inch in width and extending almost around the pipe was discovered by Mr. Smith at about the last thread where the pipe screwed into the •cut-off valve on the side nearest Division Street. Mr. Smith further determined that the gas main was located a distance of 13 feet 8 inches from the building and was •covered with dirt to a depth of 2 feet 1 inch, topped with 4 inches of concrete.
“The plaintiff in its petition alleges that •gas had accumulated under and in the said building and that the explosion and fire were caused by the ignition of the said gas which had leaked from the system owned, operated and under the exclusive control of the said city. Plaintiffs plead the application of the doctrine of res ipsa loquitur and in the alternative, plead the negligence of the employees of the said city.
“The defendants deny that the explosions and fire were caused by gas. However, they allege should it be found that the explosions and fire were so caused, it was caused by the unattended space heater, kept lit and burning by the plaintiffs in the closed, locked and unventilated premises during the entire night prior to the fire. They deny the application of res ipsa loquitur and plead the contributory negligence of plaintiff in burning the open space heater in a closed building, without ventilation, with prior knowledge of gas in the premises. In the alternative, defendants assert that if a break occurred in any of the pipes of the system, with leakage of gas, such occurrence and resulting damage was caused by an “Act of God” or “Force Majeure” because of the extremely low and freezing temperatures on the night of the fire.
“Although the defendants deny that the explosions and subsequent fire were caused by gas, it is practically conceded and the record so proves that the explosions were caused by the ignition of natural gas. The original source of this gas was the distribution system of the defendant municipality.
“However, a city engaging in the distribution and sale of natural gas, in a proprietary capacity, is not an insurer of its customers. Proof of an explosion of itself is not sufficient to make the city liable. The plaintiff must allege and prove that want of care on the part of the city, acting through its servants or agents, was the direct and proximate cause of the resulting damage unless the plaintiff be relieved of proving a chain of causation by some rule of law. The standard of care required of it is expressed in the following quotation:
‘ * * * Those who handle and distribute a highly inflammable gas are charged with the duty to exercise a degree of care commensurate with its dangerous nature and necessary to protect the public from any foreseeable injury therefrom.’ Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627, quoted in Naquin v. Marquette Casualty Company [244 La. 569] 153 So.2d 395.
“To hold the city responsible under this standard, a plaintiff must allege and prove that the city, acting through its agents, was derelict in exercising the care required of it and failed to protect him from a foreseeable injury.
“The defendants contend that the evidence adduced on the trial of the case fails to prove that a leak existed in its system prior to the fire. They argue, since plaintiff has failed to prove the existence of a leak prior to the explosions, it must have been caused by gas originating from some source other than the defendants system. Therefore, they were under no duty to protect the plaintiff from this unforeseen source. It is true the record reveals no direct proof of the existence of the break in *378 the gas main near the cut-off valve until the pipe was excavated subsequent to the fire. If the break existed prior to the explosions, its existence was not actually known by either the plaintiff or the defendant.
“The defendants therefore contend that since the doctrine of res ipsa loquitur is not applicable, the plaintiff has failed to prove that the escape of the city’s gas was a direct and proximate cause of the fire which destroyed the stock of merchandise.
“The defendants rely upon the case of A. & J. Inc. v. Southern Cities Distributing Company, 173 La. 1051, 139 So. 477, to sustain its position that the doctrine of res ipsa loquitur is inapplicable and that the plaintiff is not relieved of his obligation of proving a valid chain of causation. In the quoted case, the Supreme Court held that res ipsa is not applicable to a gas explosion occurring on the premises of the plaintiff when the defendant has no control over the premises or when there is a divided responsibility in the supplying of gas to the premises. In that case, however, a judgment of non-suit was rendered in order to permit the plaintiff to show the condition of its own house, pipes and connections and the Court intimated that this testimony when adduced might materially affect the issues. In passing, we might point out that in the instant case the plaintiff has clearly proved, by numerous witnesses, there were no leaks or defects in its pipes and installations prior to the explosions.
“However, the doctrine of possession and control stated in the cited case have been modified by recent jurisprudence.
“In the case of Naquin v. Marquette Casualty Co., 143 So.2d 122, the Court of Appeal for the 3rd Circuit, citing as authority, the A. & J. Inc. case, held that res ipsa was not applicable when the defendant had no control over the premises and rendered judgment against the plaintiff because he had not shown that the proximate cause of the accident was escaping gas from the town’s gas line.
“Certiori being granted, the Supreme Court held (244 La. 569, 153 So.2d 395) that proof in the chain of causation may be supplied by circumstantial evidence provided all hypotheses to the contrary are eliminated to a fair degree of certainty. Under this decision, a plaintiff may now rely upon circumstantial evidence, as defined therein, to establish his chain of causation. Such circumstantial evidence-must exclude any other cause to a reasonaable degree of certainty and when so established the alleged negligence vel non of the-defendant’s agents may be then considered.
“Applying this rule to the instant case,, the record shows that the pipes, connections'- and installations of the plaintiff were not a source of the leak. The record further shows that the odor of gas was prevalent within and about the premises before and after the defendant discovered a leak in its' service line. At the time of the fire, gas-was observed burning from the ground within the perimeter of the foundation although no lines entered the foundation. Gas was-further observed burning in a crack in the-pavement in the street in front of the-premises. A city official testified that on' occasions in the past the gas mains had’ cracked because of the settling of the streets. (Tr. Feb. 1963, Pp. 329). The soil, upon which the buildings and streets was-Mississippi sand or silt. The foundation of the building with connected concrete pavements served as a perfect trap for gas-entering therein through rodent holes or permeating the soil. The fact that gas was. burning along a crack in the pavement more, than 42 feet from the main indicates that it. was possible for the gas to permeate under the pavement a distance of some 15 feet from the leak to within the foundation.
“The defendants have endeavored to show that the explosions and fire occurred from causes from which they were not responsible. The experts are in agreement that the means of ignition was the space heater left burning in the front office. Defendant’s expert, Mr. Shilstone, points *379 -out that if one o-f the radiants were not lit, and gas was permitted to enter the room from this source, an explosion would result. While this possibility has been pointed out, there is no evidence to sustain this as a fact. It was further pointed out that paint was contained in the store which might possibly be the cause of an explosion. However, the mention, without proof of another possible source is not sufficient to establish those sources as proximate causes.
“In the absence of any other proven -source of a gas leak, we believe that the existence of the leak prior to the fire in the gas main has been established by circumstantial evidence in accordance with the -standard adopted by the Supreme Court. See also Mosely v. Sears, Roebuck & Co. [La.App.] 167 So.2d 408.
“We now consider the negligence -vel non of defendant’s agents. The leak ■existed for some 4 or 5 weeks and the odor •of escaping gas was reported to the defend.ant. When one leak was discovered in the ■elbow connecting the service line and the riser, the repair was made without a turning ■off the gas permitting gas to escape from .a 1}4 inch line under 18 pounds of pressure. Permitting this gas to escape into the atmosphere would have tended to prevent the detection of other leaks by odor alone. There was no inspection made of the gas •main nor does the evidence indicate that the maintenance man opened and inspected the •cut-off valve in the main. If careful inspection and observation had been made •aided by the usual and customary detection ■instruments, the leak would have been •discovered and timely action taken to repair ■the defective line. In failing to take these precautions, we find the agents of the defendants guilty of negligence.
“The defendants contend that the plaintiff was guilty of contributory negligence in burning a space heater, unattended in a closed and unventilated building with prior knowledge of the smell of gas in and about the premises. It is common knowledge that burning a space heater in an unventilated room may exhaust the oxygen in the air or cause improper combustion resulting in the release of carbon monoxide gas which may asphyxiate the occupants. However, these are not shown to be the cause of the explosions. Mr. Shilstone, the expert, testified to the effect that in the absence of a leak an explosion could only result if a radiant were unlighted permitting the entry of raw gas into the enclosure. If the heater were to go out because of the failure of the supply of gas momentarily, the source of the ignition would have also been eliminated. The same result would follow from the consumption of all the oxygen in the air. We do not find any proof that one or more of the radiants of the space heaters were unlit. We find further than when the employee of the system informed plaintiff’s agent that the leak had been found and repaired and the gas turned on, this was sufficient assurance to the plaintiff and upon which he could rely when he left the heater burning. The defendants also contend that Mr. Montero was guilty of negligence in connecting a space heater to plaintiff’s outlet in the front office some 2 days before the fire when he was not licensed to perform such an installation. The record shows that the change in heaters was made because of Mr. Ruiz’s suggestion that the heater previously installed was the source of the gas odors. In the absence of any showing that a violation of a municipal ordinance with regard to licensed plumbers was a contributing factor, we do not deem the installation by Mr. Montero and the violation of the ordinance a proximate cause. No testimony has been adduced which proves either by direct or circumstantial evidence that the heater was not properly installed or that it thereafter did not properly function. We find no contributory negligence.
“The defendant asserts as a defense that the explosion and resulting damage *380 was due to an “Act of God” or a “Force Majeure” over which he had no control. The basis for this defense was a temperature of 12 degrees Fahrenheit on the night of the fire. The record shows that this caused a disturbance in the fire alarm system and caused a delay in getting water to the fire. However, the defendant has not shown that the 12 degree temperature had any connection with the gas leak and subsequent explosions. For this reason the doctrine is inapplicable.
. “The record fails to reveal that McWane Cast Iron Pipe Company or J. B. McCrary Company, Inc. were guilty of any want of care in the fabrication or design of the said system. The third party defendants will be dismissed from the suit.”
Defendants contend the judgment of the trial court is erroneous, that it should be reversed, and in support of their position, they assign three specifications of error. These are:
1. The district court erred in holding that the cause of the fire and explosion of January 12, 1962, was a leak in the gas system operated by the city of Donaldson-ville.
2. The district court erred in holding that the plaintiffs had borne their burden of proof by a preponderance of the evidence.
3. The district court erred in refusing to uphold the alternative plea of contributory negligence pleaded on behalf of the City of Donaldsonville and Houston Fire and Casualty Insurance Company.
We find the trial court diligently considered all of the specifications of error assigned by defendant in its opinion quoted supra.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
Affirmed.