256 So.2d 352 (1971)
ROYAL INSURANCE COMPANY
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK et al.
No. 8577.
Court of Appeal of Louisiana, First Circuit.
December 20, 1971.
*353 Lawrence J. Ernst, Christovich & Kearney, New Orleans, for appellant.
James C. Walker, Jr., Watkins, Watkins & Walker, Houma, for appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
LOTTINGER, Judge.
This is a subrogation action for damages resulting in an explosion and fire which occurred at a home owned and occupied by Max Boudreaux in the City of Houma, Louisiana. Petitioner, Royal Insurance Company, was the fire insurer of the house, and under the terms of the policy of insurance paid Mr. Boudreaux damages of $7,421.14, and was subrogated by written instrument to all rights of Mr. Boudreaux against any person or corporation liable for the loss.
The defendants before us are the City of Houma and Fidelity and Casualty Company of New York, its liability insurer. The Lower Court awarded judgment in favor of petitioner and against defendants for the amount claimed, and the defendants have appealed.
The facts disclose that on the night of February 19, 1963, Mr. Boudreaux and his wife detected a strong odor of gas in the vicinity of the carport adjoining their home, and under which a gas meter was located. The next morning, Mr. Boudreaux made a radio call from a carryall, in which he was being transported, to Chuck Caillouet, dispatcher for the City of Houma, and reported the gas smell. As Mr. Boudreaux and his wife both work, they leave home in the morning and return home in the late afternoon or evening. When they returned home on the 19th, they saw a discoloration around the gas meter which they assumed indicated that someone had checked for the leak.
On the morning of February 21st, however, they still smelled gas strongly and Mr. Boudreaux testified that he then again called the City Dispatcher from the radio on the carryall. He stated that Mr. Caillouet left him with the impression that he would send someone to check the gas smell.
Upon returning home in the evening of February 21, the Boudreaux saw no evidence that any work on the gas meter or line had been done. On the morning of February 22nd they still smelled gas, although Mr. Boudreaux testified the odor was then very faint. Mrs. Boudreaux testified that on the evening of February 22nd the odor was worse than it had been on the 19th. Mrs. Boudreaux again *354 smelled gas on the morning of February 23rd, however they made no further calls to the City because they had already reported it twice and they assumed that it had been taken care of by the City.
The explosion and fire occurred on the night of February 23rd when the Boudreauxs heard a loud thud. They saw flames coming from beneath the house on the side where the gas meter and carport were located. The Houma Fire Department was called from one of the homes across the street, and the fire was put out. Shortly thereafter, a second explosion occurred under the house, however there was no second fire.
The explosions and fire caused considerable damages to the home of the Boudreauxs.
Petitioner, the fire insurer of the Boudreauxs, paid them damages caused by the fire and explosions in the sum of $7,421.14, in return for which Mr. Boudreaux signed a subrogation agreement in favor of petitioner.
The record discloses that following the first call by Mr. Boudreaux to the City on February 20, 1963, Mr. Gustave Hebert and his helper, Duey Rhodes, servicemen for the City of Houma, went to the Boudreauxs' house while the Boudreauxs were at work and found a leak in the valve by the meter which they lubricated and tightened. The meter was on the side of the Boudreauxs' house about six or eight inches from the wall. The area between the carport and the side of the house is covered by a three inch concrete slab laid by Mr. Boudreaux some eight to ten years prior to the explosion and fire. The gas line which leads from the street to the house ran under the soil parallel to the concrete runners leading to the carport at a distance of about twenty-four inches from the outside of the left runner until it reached the front of the slab and then ran under the slab for a distance of 63 inches until it came through the riser leading to the meter. The riser came through the concrete slab.
Before Mr. Hebert and his assistant repaired the valve, they attempted to find the leak by applying soap suds to the valve and riser. After repairing the valve, they stayed only a few seconds during which time, according to Mr. Hebert's testimony, they picked up their tools and left. Although he did testify that he probed by the driveway, the evidence is not clear as to whether this was before or after finding and repairing the leak. His testimony indicates that the probing was prior to repairing the leak because of the short period they remained on the premises thereafter. In any event, they made no attempt to probe from the side of the slab underneath the house although the slab ended at the side of the house and the side of the house was only six or eight inches away from the meter and riser.
Mr. Caillouet, the dispatcher for the City of Houma, testified that he remembered one call made by Mr. Boudreaux relative to a gas leak but that he does not remember a second call. A carbon copy of the work order reflecting the first call was identified and introduced into evidence. Mr. Caillouet testified that he was unable to find a carbon copy of a work order reflecting a second call, however, it could have been lost. The deposition of Maurice Guidry, Superintendent of the City of Houma Gas Department, was to the effect that he did not know whether or not his department would have a record of the second call as he did not think they could find a record that far back.
Although defendant claims that the second call was never made, the evidence preponderates to the effect that there were two calls made by Mr. Boudreaux, as testified to by him. Mrs. Boudreaux testified that her husband told her on both mornings that he would call the City of Houma, and report the gas smell. Mr. Ed McGee, for whom Mr. Boudreaux worked, testified that there were two calls made. Although he did not remember whether he was present or not at the time of the two calls, he does remember Mr. Boudreaux at least *355 telling him on two occasions that he had called the City of Houma to report gas leaks.
Following the fire, Mr. Guidry and other employees of the City went to the Boudreaux home, broke the concrete slab around the meter, and found a gas leak. The leak was on a 90° elbow at the bottom of the riser about twelve or fifteen inches below ground level on the City side of the meter. The pipe was removed and the leak repaired. Mr. Guidry was of the opinion that the leak in the pipe was caused by electrolysis, which takes place over a period of years.
The defendant alleges error on the part of the Lower Court as follows:
1. In holding that after the City employees lubricated and repaired the valve, they checked for a leak near the runner but did not probe in the area of the riser although it would have been possible for them to probe in that area also.
2. In holding that only perfunctory check was made by the City of Houma employees to determine whether or not there might have been a second leak after they had repaired the first leak.
The jurisprudence of this State is well established to the effect that those who deal in or handle dangerous substances or agencies such as explosives, electricity, gas, firearms, combustibles, and fireworks are held to an extraordinary degree of care. Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269; Normand v. Normand, La.App., 65 So.2d 914; Holland v. St. Paul Mercury Ins. Co., La.App., 135 So.2d 145; Surry v. Arkansas-Louisiana Gas Co., La.App., 170 So.2d 133; Bayou Materials, Inc. v. City of Donaldsonville, La.App., 192 So.2d 373.
As the City dealt in and sold a highly dangerous material, namely, natural gas, it is therefore to be held to an extraordinary degree of care. The testimony of Mr. Hebert indicates that following his fixing of the first leak, he and his helper only remained on the premises for a few seconds. Although he did probe, either before or after fixing the leak, on the outside edge of the concrete slab, he testified that he did not probe under the slab although he could have done so at an angle toward the riser. The substance of Mr. Hebert's testimony was to the effect that if you go on a call and find one leak and fix it there is no need to look for another one.
We feel that the failure to thoroughly search to determine whether there were any remaining leaks after finding the first leak constituted negligence on the part of the City of Houma Gas Department. Furthermore, the preponderance of the evidence is to the effect that after this gas leak was fixed, the City of Houma again received a call from Mr. Boudreaux to the effect that he still smelled natural gas on his premises, to which call the City of Houma did not respond.
In the case of Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395, the Supreme Court held that proof in the chain of causation may be supplied by circumstantial evidence provided all hypothesis to the contrary are eliminated to a fair degree of certainty. The Naquin case was cited with approval in Bayou Materials, Inc. v. City of Donaldsonville, La.App., 192 So.2d 373, and American Casualty Co. v. Town of Port Allen, La.App., 230 So.2d 312.
The evidence clearly preponderates that the cause of the explosion and fire was a leak which was subsequently discovered in the gas line on the City side of the meter following the explosions and fire. The evidence further discloses that Mr. Boudreaux notified the City of Houma on two occasions of leaks, one leak being repaired after his first call, and no response being given to his second call by the City officials. The City employees failed to sustain a high degree of care imposed upon them.
*356 Although the defendant claims that the Boudreauxs were negligent in failing to continue to make calls to the City of Houma relative to the continuing smell of gas, we believe that the calls made by them notifying the City of the suspected leaks absolves them from any degree of negligence in this case.
We find no error on the part of the Lower Court, and for the reasons hereinabove assigned, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.