331 So.2d 81 (1976)
AETNA CASUALTY & SURETY CO.
v.
Bob ROTHMAN, d/b/a Bob Rothman Heating & Air Conditioning, et al.
No. 10647.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
*83 Ronald L. Causey, Baton Rouge, for appellant.
James E. Moore and J. Byron Stringer, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and EDWARDS, JJ.
LANDRY, Judge.
Defendant Bob Rothman (Appellant) appeals from judgment in favor of Aetna Casualty & Surety Co. (Aetna), as subrogee of Aetna's insured, Robert Zimmer, for fire damage to said insured's residence allegedly caused by Appellant's negligent repair of Zimmer's central heating unit. Appellant also appeals dismissal of his third party demand against Aetna as Appellant's averred liability insurer. We affirm.
Appellant is engaged in the business of installing, servicing and repairing heating and air conditioning systems. On January 27, 1973, Appellant received a call for service at the home of Robert Zimmer, Baton Rouge, Louisiana. The call was made by Appellant's employee, Carey Lemoine. On arrival at the Zimmer home and before entering the residence, Lemoine noticed that the cap was missing from the heater vent pipe which extended above the roof of the residence. After being informed by Zimmer that the heating system would not come on, Lemoine proceeded to the attic to inspect the heating unit. On completing his inspection, Lemoine informed Zimmer that the gas valve which feeds the combustion chamber of the heating unit was not operating and required replacement. Lemoine then replaced the valve with a new spare valve which he had available. After making the replacement, Lemoine checked the system through three complete cycles and pronounced it in good operating order. Lemoine then departed, after stating he would return the following Monday morning to replace the missing vent cap. He explained to Zimmer that the missing cap could not be replaced that day because, it being Saturday, all supply houses were closed and Lemoine did not have a spare cap in his service vehicle.
Approximately 20 minutes after Lemoine's departure, Mr. Zimmer detected an odor emanating from the heating system. Mr. Zimmer described the odor as similar to that of burning wire insulation. He attempted to turn the heating system off by means of the thermostat control, but to no avail. Shortly thereafter, Mr. Zimmer discovered the ceiling of the bathroom was on fire. The fire spread rapidly, notwithstanding the main electrical switch was turned off and the main gas supply valve was closed. The fire did approximately $10,000.00 damage to the Zimmer home.
The crucial issue is proof of causation of the fire, concerning which there is circumstantial evidence only. The trial court found the facts in this instance indistinguishable from those in Mosely v. Sears, *84 Roebuck and Company, 167 So.2d 408, from which conclusion he deemed the cited authority dictated judgment herein on Aetna's main demand. Appellant's third party demand against Aetna was rejected by the trial court upon finding Aetna's liability coverage of Appellant excluded a "completed operation" into which category this instance falls.
Plaintiff alleged the fire resulted from Appellant's negligence. Alternatively, plaintiff invoked the doctrine of res ipsa loquitur. Appellant contends there was no proof of negligence in this instance as the precise cause of the fire was not shown. While Appellant concedes that negligence may be established by circumstantial evidence, Appellant maintains the required proof is lacking in this instance.
Plaintiff produced a single expert, Dr. Gerald Whitehouse, Mechanical Engineer, who testified that the valve in question had been subjected to extremely high temperature since it was partially melted. He explained that the unit continued to operate, despite efforts to turn it off, because the valve in question remained open. According to Whitehouse, the valve remained open because of one of three possibilities: (1) the valve was improperly installed, the greatest possibility in this instance being that the electrical wires controlling the valve were crossed; (2) the valve itself was defective; and (3) trash entered the valve and prevented it from properly "seating" or closing. The latter possibility was considered the least likely to have occurred. Dr. Whitehouse conceded that it was impossible to determine whether the wires were crossed on installation or whether the valve itself was defective. He also conceded that from the condition of the valve it is possible the fire originated from some outside source.
We find the doctrine of res ipsa loquitur applicable in this instance. We also find that Appellant has failed to successfully rebut the inference of negligence resulting from the application of that legal principle.
Although the jurisprudence variously refers to the burden of proof incumbent upon a plaintiff as proof to a "reasonable certainty," proof to a "legal certainty," or proof by evidence which is of "greater weight" or "more convincing" than that to the contrary, the proof required, either by direct or circumstantial evidence, is sufficient to constitute a preponderance when the evidence as a whole shows that the fact or causation sought to be proved is more probable than not. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621.
Res ipsa loquitur (the thing speaks for itself), when applicable, is a rule of circumstantial evidence where negligence on defendant's part is inferred because the facts indicate defendant's negligence to be the more probable cause of plaintiff's injury in the absence of other as plausible explanation by credible witnesses. Pilie v. National Food Stores of Louisiana, Inc., 245 La. 276, 158 So.2d 162; Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389; Boudreaux v. American Insurance Company, above. In such instances the evidence indicates defendant's negligence as the cause of plaintiff's injury notwithstanding lack of proof of the precise negligence involved. Boudreaux v. American Insurance Company, above.
The doctrine of res ipsa loquitur warrants rather than compels the inference of negligence resulting from its application. The rule does not dispense the necessity of proof of defendant's negligence; it is merely a procedural aspect of the proof process. In a proper case the rule permits plaintiff to set before the court, together with proof of the occurrence of the accident and sufficient attending circumstances to invoke the rule, the inference of negligence. Boudreaux v. American Insurance Company, above.
In determining liability pursuant to the res ipsa loquitur principle the test *85 is, do the facts suggest negligence on defendant's part rather than some other fact or factors, was the most plausible explanation of the accident? Pilie v. National Food Stores of Louisiana, Inc., above; Boudreaux v. American Insurance Company, above. If the answer to this query is in the affirmative, res ipsa loquitur applies. However, application of the doctrine of res ipsa loquitur is not proper if it may be as reasonably inferred the accident did not occur because of defendant's negligence, as it could be inferred the accident was due to defendant's negligence. Boudreaux v. American Insurance Company, above.
Appellant's contention that res ipsa loquitur is inapplicable because of the absence of defendant's control over the heating system is without merit.
In Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, the Supreme Court held that the element of control by the defendant of the instrumentality causing damage is not indispensable to application of the doctrine of res ipsa loquitur. Granted that Plunkett is distinguishable from the present case in that defendant in Plunkett, above, had installed a heating system in plaintiff's home 39 hours before the fire which occurred, and which system was the cause of the fire. Nevertheless, Plunkett, above, stands for the proposition that control by defendant is not absolutely essential to application of res ipsa loquitur and that the principal announced in Plunkett, above, is conformable with the tendency of modern courts to extend the res ipsa loquitur doctrine to an ever broadening line of cases.
Subsequent to Plunkett, above, this circuit decided Mosely v. Sears, Roebuck and Company, La.App., 167 So.2d 408, which is remarkably similar to the facts in the case at hand. In Mosely we in effect followed and applied the principles set out in Plunkett, above.
The record shows that on at least two prior occasions, Appellant had been called to service the system in question. Each instance involved relighting the pilot light which had gone out. On the first occasion the pilot light was merely re-lighted. In the second instance it was found that the "breather tube" and "pilot tubes" had become clogged. After cleaning these tubes, Appellant's employees merely relighted the pilot light. While Appellant had not installed the system in question, it is clear that Appellant was familiar with this unit. It is equally clear that Appellant was the only maintenance service Zimmer had employed to check the unit in quite some time. Appellant changed the valve. The fire commenced within 20 to 30 minutes after Appellant's employee substituted the new valve. The fire originated in the attic in the vicinity of the area where the heating unit was installed. Appellant installed a new heating system in Zimmer's home after the fire. The only expert testimony of record indicates that the fire could have started in the heating system because either: (1) the valve was cross-wired upon installation; (2) the valve itself was defective; or (3) trash entered the valve and prevented its proper seating and caused it to remain at least partially open. We find this combination of circumstances gives rise to application of the doctrine of res ipsa loquitur and the consequent inference that the most plausible cause of the fire was Appellant's negligence. Therefore, the duty devolved upon Appellant to establish circumstances from which it could be reasonably inferred with equal plausibility that the fire did not result from Appellant's negligence. In this regard we note Appellant's reference to a gas-operated water heater situated in a kitchen closet near the bathroom wall. The contention is made that the fire could have started from the water heater. However, the record if barren of proof that the fire in the attic was caused by the water heater in the kitchen below.
Appellant's remaining contention is that his liability in this instance was covered by a comprehensive liability policy issued by *86 Aetna, and that the trial court erred in deciding otherwise. The ruling of the trial court in this regard was based on the finding that the repair of the heating unit constituted a "completed operation" within the meaning of the definition "completed operation" contained in the policy and that such operations were expressly excluded from coverage.
The policy defines "completed operation" as follows:
"`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."
Appellant suggests the service performed in this instance was not a completed operation in that the operation was not finished until the missing outside vent cap was replaced. Appellant also invokes the rule that ambiguities are to be construed against an insurer and in favor of the insured and on this premise maintains the policy coverage provisions are misleading, confusing and uncertain.
The testimony of Rothman, Lemoine and Whitehouse is unanimously to the effect that the missing vent cap bore no relation to the fire, nor was it vital to the safe operation of the heating system. The sole function of the cap was to prevent downdrafts which might extinguish the pilot light. The repair of the heater was complete when Lemoine replaced the valve and put the heater back in operation. When Lemoine left the Zimmer residence, Zimmer had put the system to its intended use. Under the definition of "completed operation" contained in the policy, this particular operation had indeed been completed.
Appellant's application for the insurance issued by Aetna, and the schedule of coverage pursuant to the general liability coverage portion of the policy itself both clearly set out that "completed operations" are not covered, and no premium was charged for such coverage. Appellant's argument appears to be that since the policy defines different types of coverages for which different premiums are paid, it is difficult for a policyholder to determine the precise coverage afforded by the policy. This position is without merit. The policy contains a paragraph entitled "Description of Hazards," under which are listed the following: (A) PremisesOperations; (B) Escalators; (C) Independent contractor Let or sublet work; (D) Completed Operations; (E) Products; and (F) Contractual. This same paragraph clearly shows coverages (D) and (E) as "Not Covered." The issue here is not ambiguity, confusion or uncertainty resulting from a misleading coverage provision, but rather the failure of the insured to purchase an available coverage which the insured did not opt to secure. We find the definition of "completed *87 operations" to be clear and unambiguous. We also find the insured failed to purchase this particular protection.
The judgment of the trial court is affirmed at Appellant's cost.
Affirmed.